# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MARK MILANO, ROBERT CAMERON, RODNEY HERGENRADER, KATHERINE H. JONCAS and CHARLES VAN HOOSER, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) | **CIVIL ACTION NO.:** 2:20-cv-17793-KM-ESK |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION, THE BOARD OF DIRECTORS OF COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION, THE 401(K) INVESTMENT COMMITTEE OF COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION and JOHN DOES 1-30. | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................1

II.   STANDARD OF REVIEW ..................................................................6

III.  STATEMENT OF FACTS ..................................................................8

    A.  The Totality of Facts Supports the Inference of An Imprudent
Monitoring
Process.............................................................................................8

        1.  MassMutual's "Rebranding Process" ...........................................8

        2.  Five of the Plan's Funds with Substantial Assests Had Identical
Lower Cost Alternatives.................................................................9

        3.  Defendants Failed to Timely Investigate Availablity of Lower
Cost Collective Trusts...............................................................10

        4.  Many of the Actively Managed Funds in the Plan had Lower
Cost, Better Performing, Actively Managed Alternatives...........11

        5.  The Plan's Recordkeeping and Administrative Costs Were
Excessive During the Class Period ...............................................11

IV.  ARGUMENT ...................................................................................12

    A.  Plaintiffs Have Standing to Challenge Funds in Which They Did Not
Personally Invest ............................................................................12

    B.  The Totality of Plaintiffs' Allegations Plausibly State A Claim for
Breach of the Fiduciary Duty of Prudence in Count I .......................17

        1.  The Precedent of Both the Third Circuit and This District Court
Support Plaintiffs' Claims ..........................................................17

        2.  ERISA Requires Selection of Lower-Cost Alternatives When
They Are Identical to Higher-Cost Alternatives...........................21

        3.  ERISA Required Defendants to Timely Offer CITs ...................25

        4.  Defendants Failed to Consider Other Lower Cost, Better
Performing Actively Managed Investment Options.....................25

        5.  Defendants Cannot Rely on a Purportedly "Array of Investments
Charging A Reasonable Range of Fees" .......................................32

        6.  The Plan's Excessive Recordkeeping Fee Further Demonstrates
Defendants Breached Their Duty of Prudence .............................33

    C.  The Complaint States A Plausible Claim for Breach of the Duty of
Loyalty.............................................................................................38

    D.  Cognizant and the Board are Properly Alleged As Defendants..........39

V.  CONCLUSION.................................................................................40

# <u>TABLE OF AUTHORITIES</u>

PAGE(S)

**Statutes**

ERISA § 1132(a)(2) ....................................................................................17

Fed. R. Evid. 201(b)(2) ...............................................................................8

29 U.S.C. §1132(a)(2) .................................................................................13

**Cases**

*Anderson v. Intel Corp.*,
2021 WL 229235 (N.D. Cal. Jan. 21, 2021) ..................................... 15, 31

*Bell v. Pension Committee of ATH Holding Company, LLC*,
2017 WL 1091248 (S.D. Ind. Mar. 23, 2017) ..........................................2

*Boley et al. v. Universal Health Services, Inc.*, *et al.*
2020 WL 6381395 (E.D. Pa. Oct. 30, 2020) ............................................6

*Bouvy v. Analog Devices*, *Inc.*,
2020 WL 3448385 (S.D. Cal. June 24, 2020)......................................2, 20

*Braden v. Wal-Mart, Inc.*,
588 F.3d 585 (8th Cir. 2009) ...............................................................6, 13

*Brotherston v. Putnam Investments LLC*,
2016 WL 1397427 (D. Mass. April 7, 2016)...........................................23

*Bryant v. Wal-Mart Stores, Inc.*
2020 WL 4333452 (S.D. Fla. July 15, 2020)...........................................16

*Cassell v. Vanderbilt*,
285 F.Supp.3d 1056 (M.D. Tenn. 2018)..............................................2, 38

*Crawford, et al., v. CDI Corporation, et al.*,
No. 2:20-cv-3317-CFK (ECF No. 13) (E.D. Pa. Nov. 5, 2020) .........6, 15

*Creamer v. Starwood Hotels & Resorts Worldwide, Inc.*,
2017 WL 2909408 (C.D. Cal. May 1, 2017) ...........................................................35

*Cryer v. Franklin Templeton Resources Inc.*,
2017 WL 818788 (N.D. Cal. Jan. 17, 2017) ..........................................................32

*Cunningham v. Cornell Univ.*,
2017 WL 4358769 (S.D.N.Y. Sept. 29, 2017) .....................................................8, 29

*Cunningham v. Cornell Univ.*,
2019 WL 275827 (S.D.N.Y. Jan. 22, 2019) ...........................................................17

*David v. Alphin*
817 F. Supp. 2d 764 (W.D.N.C. 2011) ...................................................................16

*Davis v. Salesforce.com, Inc.*,
2020 WL 5893405 (N.D. Cal. Oct. 5, 2020) .................................................... 26, 38

*Davis et al. v. Washington U.*
960 F.3d 478 (8th Cir. 2020) .................................................................................23

*Dezelan v. Voya Ret. Ins. & Annuity Co.*,
2017 WL 2909714 (D. Conn. July 6, 2017).............................................................16

*Disselkamp, et al. v. Norton Healthcare, Inc. et al.*,
2019 WL 3536038 (W.D. Ky. Aug. 2, 2019) ................................................... 23, 24

*Falberg v. Goldman Sachs Group, Inc.*,
2020 WL 3893285 (S.D.N.Y. July 9, 2020) ........................................................2, 16

*Feinberg v. T.Rowe Price Group, Inc., et al.*,
2018 WL 3970470 (D. Md. Aug. 20, 2018) ........................................................2, 29

*Gonzalez de Fuente v. Preferred Home Care of New York, LLC*,
2020 WL 5994957 (E.D.N.Y. Oct. 9, 2020)........................................................... 15

*Graden v. Conexant Systems, Inc., et al.*,
574 F.Supp.2d 456 (D.N.J. 2008) ..........................................................................40

*Hay v. Gucci America, Inc., et al.*,
2018 WL 4815558 (D.N.J. Oct. 3, 2018)...................................................... 2, 14, 23

*Henderson v. Emory Univ.*,
252 F.Supp.3d 1344 (N.D. Ga. May 10, 2017) ...................................................3, 33

*IJKG Opco LLC v. General Trading Co.*,
2020 WL 1074905 (D.N.J. March 6, 2020).............................................................40

*Johnson et al. v. Fujitsu Tech. and Bus. of Am., Inc.*,
250 F.Supp. 3d 460 (N.D. Cal. Apr. 11, 2017)........................................ 14, 23, 28

*Johnson v. Providence Health & Services*,
2018 WL 1427421, at * 4 (W.D. Wash. March 22, 2018) .............................. 14, 38

*Karg v. Transamerica Corp.*,
2019 WL 3938471 (N.D. Iowa Aug. 20, 2009)......................................................31

*Kong v. Trader Joe's Co.*,
2020 WL 5814102 (C.D. Cal. Sept. 24, 2020) .......................................................36

*Kong v. Trader Joe's Co.*,
2020 WL 7062395 (C.D. Cal. Nov. 30, 2020)................................................. 35, 36

*Kruger et al. v. Novant Health, Inc.*,
131 F.Supp.3d 470 (M.D.N.C. 2015) ............................................................. 24, 35

*Larson v. Allina Health System*,
350 F.Supp.3d 780 (D. Minn. 2018)............................................................... 14, 26

*Main v. Amr. Airlines*,
248 F.Supp.3d 786 (N.D. Tex. Mar. 31, 2017)............................................ 2, 32, 39

*Marshall v. Northrop Grumman Corp.*,
2019 WL 4058583 (C.D. Cal. Aug. 14, 2019)........................................................31

*McCool v. AHS Mgmt Co., Inc.*,
2021 WL 826756 (M.D. Tenn. March 4, 2021) ...................................................2, 13

iv

*In re MedStar ERISA Litig.*,
2021 WL 391701 (D. Md. Feb. 4, 2021) .................................................................2

*Meiners v. Wells Fargo & Co.*,
898 F.3d 820 (8th Cir. 2018) ................................................................ 28, 29, 31

*Morin, et al.  v. Essentia Health et al.*,
2017 WL 4083133 (D.Minn. Sept. 14, 2017) ..........................................................7

*In re M&T Bank Corp. ERISA Litig.*,
2018 WL 4334807 (W.D.N.Y. Sept. 11, 2018) ......................................................26

*Nicolas v. Trustees of Princeton Univ.*,
2017 WL 4455897 (D.N.J. Sept. 25, 2017) ................................................. 2, 26, 32

*Ortiz v. American Airlines, Inc.*
2020 WL 4504385 (N.D. Tex. Aug. 5, 2020) ........................................................16

*Parmer, et al. v. Land O'Lakes, Inc., et al.*,
2021 WL 464382 (D. Minn. Feb 9, 2021) .................................................... 2, 6, 15

*Patterson v. Morgan Stanley*,
2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ..........................................................16

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Medical Centers Retirement Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013)...................................................................................31

*Perelman v. Perelman*
793 F.3d 368 (3d Cir. 2015)...................................................................................17

*Pinnell, et al. v. Teva Pharmaceuticals USA, Inc., et al.*,
2020 WL 1531870 (E.D.Pa. Mar. 31, 2020)................................................. Passim

*Pledger v. Reliance Trust Co.*,
240 F.Supp. 1314 (N.D. Ga. 2017) ........................................................................40

*Renfro v. Unisys Corp.*,
671 F.3d 314 (3d Cir. 2011)................................................................... 18, 19, 21

*Rohan v. Saint Luke's Health System, Inc., et al.,*
2020 WL 8410451 (W.D. Mo. June 22, 2020) ......................................................24

*Sandoval v. Exela Enterprise Solutions, Inc., et al.,*
No. 3:17cv1573, slip op. at 8 (D. Conn. Mar. 30, 2020) ..........................................2

*Sacerdote v. New York Univ.,*
2018 WL 840364 (S.D.N.Y. Feb. 13, 2018) ..............................................................14

*Sacerdote v. New York Univ.,*
328 F.Supp.3d 273 (S.D.N.Y. 2018) ........................................................................34

*Savage v. Sutherland Global Services, Inc.,*
2021 WL 726788 (W.D.N.Y. Feb. 25, 2021) ..........................................................2, 8

*Schering-Plough Corp. ERISA Litig.,*
2007 WL 2374989 (D.N.J. Aug. 15, 2007) .................................................... 39, 40

*Silva v. Evonik Corp.*
2020 WL 1531870 (Dec. 30, 2020) ...............................................................Passim

*Sweda v. Univ. of Pennsylvania,*
923 F.3d 320 (3d Cir. 2019).........................................................................Passim

*Terraza v. Safeway,*
241 F.Supp.3d 1057 (N.D. Cal. Mar. 13, 2017) ............................................. 23, 33

*Thole v. U.S. Bank N.A.,*
140 S. Ct. 1615 (2020) .............................................................................. 6, 14, 15

*Tibble v. Edison Int'l,*
135 S. Ct. 1823 (2015) .........................................................................................6

*Tibble v. Edison Int'l,*
843 F.3d 1187 (9th Cir. 2016) ................................................................... 5, 17, 22

*Tibble v. Edison Int'l,*
2017 WL 3523737 (C.D. Cal. Aug. 16, 2017 .................................................. 27, 38

*Tracey et al. v. MIT*,
2017 WL 4478239 (D.Mass. Oct. 4, 2017) ........................................................2, 25

*Troudt v. Oracle Corp.*,
2017 WL 1100876 (D. Col. Mar. 22, 2017) .......................................................3, 33

*Urakhchin Allianz Asset Mgmt. of Am., L.P.*,
2016 WL 4507117 (C.D. Cal. Aug. 5, 2016) ..........................................................14

*Wilcox v. Georgetown Univ.*,
2019 WL 132281 (D.D.C. Jan. 8, 2019) .................................................................16

*Wildman, et al. v. Am. Century Serv., LLC., et al.*,
237 F. Supp.3d 902 (W.D. Mo. 2017) ...............................................................3, 28

*Young v. GM Inv. Mgmt. Grp.*,
325 F. App'x 31 (2d Cir. 2009) ..............................................................................35

Plaintiffs Mark Milano, Robert Cameron, Rodney Hergenrader, Katherine H. Joncas, and Charles Van Hooser (together, "Plaintiffs"), by and through their attorneys, respectfully submit this Opposition to Defendants'[1] Motion to Dismiss.[2]

## I.  INTRODUCTION

District courts within the Third Circuit routinely deny motions to dismiss the very type of imprudent management allegations brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") that are pled in the Complaint. This case is on all fours with both *Silva v. Evonik Corp*. slip op. (D.N.J. Dec. 30, 2020) (attached to Gyandoh Decl. as Ex. A) and *Pinnell, et al. v. Teva Pharmaceuticals USA, Inc., et al.*, 2020 WL 1531870, at * 1 (E.D.Pa. Mar. 31, 2020) (plaintiffs, like Plaintiffs here, "plead charts, comparative studies, and specific facts necessary to proceed into discovery.") where the courts denied defendants' motions

---

[1] "Defendants" refers to Cognizant Technology Solutions U.S. Corporation ("Cognizant"), The Board of Directors of Cognizant Technology Solutions U.S. Corporation ("Board"), The 401(k) Investment Committee of Cognizant Technology Solutions U.S. Corporation ("Committee"), and John Does 1-30.

[2] The Memorandum of Law In Support of Defendants' Motion to Dismiss Complaint (ECF No. 16) is referred to herein as "Defs. Mem."  All references to "¶" or "Complaint" are to the Complaint (ECF No. 1).

to dismiss.[3]  *Silva* is particularly pertinent because the court addressed and rejected similar arguments made here by Defendants.[4]

Moreover, the Third Circuit, as well as appellate courts across the nation, have upheld claims similar to those pled in the Complaint.  *See, e.g., Sweda v. Univ. of Pennsylvania*, 923 F.3d 320, 333 (3d Cir. 2019) (finding plaintiff to have stated a claim by alleging, *inter alia*, that "despite the availability of low-cost institutional class shares, [defendant] selected and retained identically managed but higher cost retail class shares.").  District courts from the First through Eleventh Circuits, in addition to the Third Circuit district court decisions mentioned above, are in accord.[5]

---

[3] *See also Hay v. Gucci America, Inc.*, *et al.*, 2018 WL 4815558, at * 6 (D.N.J. Oct. 3, 2018) (upholding excessive fee claim); *Nicolas v. Trustees of Princeton Univ.*, 2017 WL 4455897, at * 7 (D.N.J. Sept. 25, 2017) (denying motion to dismiss in large part in case alleging excessive fees).

[4]  Counsel for Defendants were also defense counsel in *Pinnell* and *Hay* where they made similar arguments rejected by the Court.

[5]  *See, e.g. Tracey et al. v. MIT*, 2017 WL 4478239, * 2 (D.Mass. Oct. 4, 2017) (upholding excessive fee claim); *Savage v. Sutherland Global Services, Inc.*, 2021 WL 726788 (W.D.N.Y. Feb. 25, 2021); *Falberg v. Goldman Sachs Group, Inc.*, 2020 WL 3893285, at * 11 (S.D.N.Y. July 9, 2020) (same); *Sandoval v. Exela Enterprise Solutions, Inc., et al.*, No. 3:17cv1573, slip op. at 8 (D. Conn. Mar. 30, 2020) (same) (attached to Gyandoh Declaration as Ex. B); *Feinberg v. T.Rowe Price Group, Inc., et al.*, 2018 WL 3970470, at * 7 (D. Md. Aug. 20, 2018) (same); *In re MedStar ERISA Litig.*, 2021 WL 391701, *6-7 (D. Md. Feb. 4, 2021) (same); *Main v. Amr. Airlines*, 248 F.Supp.3d 786, 794 (N.D. Tex. Mar. 31, 2017) (same); *McCool v. AHS Mgmt Co., Inc.*, 2021 WL 826756 (M.D. Tenn. March 4, 2021); *Cassell v. Vanderbilt*, 285 F.Supp.3d 1056, 1061 (M.D. Tenn. 2018) (same); *Bell v. Pension Committee of ATH Holding Company, LLC*, 2017 WL 1091248, at * 4 (S.D. Ind. Mar. 23, 2017) (same); *Parmer, et al. v. Land O'Lakes, Inc., et al.*, 2021 WL 464382 (D. Minn. Feb 9, 2021) (same); *Bouvy v. Analog Devices*, *Inc.*, 2020 WL 3448385

In light of this crushing weight of authority, and the facts pled here, none of the arguments Defendants make support dismissal of this suit.

*First,* the Third Circuit and other circuits are clear that in these type of ERISA actions, a plaintiff need not directly allege how the plan fiduciaries mismanaged the plan, but may provide circumstantial evidence from which the District Court can reasonably infer that a breach occurred. *Sweda*, 923 F.3d at 332. Accordingly, Defendants' argument that Plaintiffs failed to allege the fiduciaries' "actual process," Defs. Mem. at 1, has no viability in the Third Circuit. Additionally, Defendants' argument that they employed a prudent process, Defs. Mem. at 16, "goes to the merits and is misplaced at this early stage." *Sweda*, 923 F.3d at 332. Indeed, Defendants' assertion that they decreased fees in 2018, four years into the Class Period, does not help, because failure to do so before then was a breach that baked in the Plan and participants' losses that had accrued up to that time. *Wildman, et al. v. Am. Century Serv., LLC., et al.*, 237 F. Supp. 3d 902, 915 (W.D. Mo. 2017) (rejecting argument that "delaying the transfer of Plan assets to a lower-cost share class" does not support an inference of flawed decision-making).

---

(S.D. Cal. June 24, 2020) (same); *Troudt v. Oracle Corp*., 2017 WL 1100876, at * 3 (D. Col. Mar. 22, 2017) (same); *Henderson v. Emory Univ.*, 252 F.Supp.3d 1344, 1349 (N.D. Ga. May 10, 2017) (same).

*Second,* Defendants miss the point of Plaintiffs' primary claim, which is that during the Class Period[6] (December 2, 2014 through the date of judgment), Defendants selected a slate of investment options for the Plan[7] -- including the MassMutual American Century branded target date funds – that were imprudent due to their high fees where *identical* or materially similar lower cost alternative funds – differing only in price – were available in the marketplace. The Plan paid an unnecessary premium for these funds because they were provided through Mass Mutual instead of obtained directly from the fund provider. *See* Exhibit C to the Gyandoh Decl. This is not an allegation that Defendants had to scour the marketplace for cheaper funds because the funds were already in the Plan and were identical in all ways except price and name. ¶ 82. Nor is this a claim that Defendants were required to include any specific type of investment vehicle like a collective investment trust ("CIT"); but once Defendants selected a specific investment vehicle, the fiduciaries had the obligation to select one with reasonable fees.

Having control of a billion dollar plan at all times during the Class Period required the fiduciaries to leverage the Plan's considerable size – among the largest

---

[6] All capitalized and undefined terms herein shall have the same meaning as ascribed to them in the Complaint.

[7] "Plan" refers to the Cognizant Technology Solutions 401(k) Savings Plan.

in the country – to obtain better investment products that were available.[8]  Simply put, "[f]iduciaries must also consider a plan's "power ... to obtain favorable investment products, particularly when those products are substantially identical— other than their lower cost—to products the trustee has already selected."" *Sweda*, 923 F.3d 328-329 (citing *Tibble v. Edison Int'l*, 843 F.3d 1187, 1198 (9th Cir. 2016).

*Third,* Defendants' argument regarding the "Active Options" is a red herring. The argument requires the Court to make determinations on whether Plaintiffs' alternative funds are appropriate comparators which cannot be done at the motion to dismiss stage.  Moreover, the allegations regarding the "Active Options" simply illustrate the imprudence of the fiduciaries' investment and fee monitoring process through comparison of the Plan's funds to other benchmarks, such as other comparable investments available on the market and widely recognized benchmarks. These allegations complement the primary allegations set forth above.

*Fourth*, a plan like the Plan with nearly 40,000 participants is capable of obtaining some of the best recordkeeping fees in the market at all times during the Class Period.  Assuming *arguendo* the recordkeeping fees decreased at some point

---

[8] The Plan had at least $1.1 billion dollars in assets under management as of December 31, 2018. ¶ 56.  The 2018 Form 5500 lists 39,958 Plan "participants with account balances as of the end of the plan year."   ¶ 39 (citing 2018 Form 5500 at 2.).

during the Class Period, it still does not excuse the earlier breach in failing to negotiate reasonable recordkeeping fees.

*Fifth*, Plaintiffs have established individual standing with respect to their investments in the Plan, which confers upon them standing to "seek relief… that sweeps beyond [their] own injury." *Braden v. Wal-Mart, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009). *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020) does not alter this framework. At least three recent decisions have rejected applicability of *Thole* in actions like this one concerning defined contribution plans.[9]

Lastly, contrary to Defendants' assertion, having a mix and range of investment options is insufficient to dismiss a complaint because to do so "would insulate from liability every fiduciary who, although imprudent, initially selected a 'mix and range' of investment options." *Sweda*, 923 F.3d at 333-34. In short, precedent in the Third Circuit requires denial of Defendants' motion.

## II.  STANDARD OF REVIEW

ERISA's duty of prudence applies to both the initial selection of an investment and the continuous monitoring of investments to remove imprudent ones. *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828-29 (2015). A breach of the fiduciary duty of

---

[9] *See Parmer et al. v. Land O'Lakes, Inc. et al*., 2021 WL 464382 (D. Minn. Feb 9, 2021); *Crawford, et al., v. CDI Corporation, et al.*, No. 2:20-cv-3317-CFK (ECF No. 13) (E.D. Pa. Nov. 5, 2020); *Boley et al. v. Universal Health Services, Inc.*, *et al.* 2020 WL 6381395 (E.D. Pa. Oct. 30, 2020).

6

prudence may be alleged with circumstantial facts as Plaintiffs have done here. Indeed, Defendants' assertion that Plaintiffs acknowledge they lack "actual knowledge of Defendants' decision-making process," ¶ 60, is of no moment. *See Morin, et al. v. Essentia Health et al.*, 2017 WL 4083133, at * 10 (D.Minn. Sept. 14, 2017) (rejecting defendants' argument that "Plaintiffs concede that they lack 'actual knowledge' of the process used, [so] Plaintiffs' allegations of a breach of fiduciary duty are inadequate to survive the present Motion to Dismiss.").

When considering a motion to dismiss under Rule 12(b)(6), a court takes the factual allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiffs. *Sweda,* 923 F.3d at 325 (noting "we apply the same standard as the district court and construe the complaint 'in the light most favorable to the plaintiff.'") (citation omitted). Of particular importance here, in cases alleging imprudent fiduciary process, the Third Circuit agrees with the Eighth Circuit in *Braden*, that "[r]equiring a plaintiff to rule out every possible lawful explanation for the conduct he challenges would invert the principle that the complaint is construed most favorably to the nonmoving party." *Sweda*, 923 F.3d at 326 (citing *Braden*, 588 F.3d at 597).

The reason is simple. Plaintiffs "generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Braden*, 588 F.3d at 598. The Court must employ a "holistic approach" and

"remain mindful that '[m]any allegations concerning fiduciary conduct . . . are inherently factual question[s]." *Silva*, at p. 6 (citation omitted); *see also Pinnell*, 2020 WL 1531870, at * 3 ("We must … complete a 'careful and holistic evaluation' of a complaint alleging violations of the Act under a totality of the circumstances approach.").

### III.   STATEMENT OF FACTS[10]

#### A. The Totality of Facts Supports the Inference of An Imprudent Monitoring Process

Measured by several different benchmarks, it is obvious during the Class Period Defendants breached the duties they owed to the Plan.  *Id.* at ¶¶ 69, 82, 89-92.

#### 1.  MassMutual's "Rebranding Process"

MassMutual is the Plan's recordkeeper and engages in a rebranding process whereby it contracts with providers of mutual funds to offer each provider's funds to the Plan but only as a MassMutual product called a separate investment account

---

[10] Defendants ask this Court to take judicial notice of twenty-seven documents, which they submitted as exhibits along with their Motion to Dismiss.  *See* ECF Nos. 17-1 to 17-27).  Under Fed. R. Evid. 201(b)(2), "a court may take judicial notice of any fact that is 'not subject to reasonable dispute because it: (1) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *Savage*, 2021 WL 726788 at * 2.  However, "these documents may only be considered for the fact that they contain a statement therein but not to prove the truth of the statement."  *Id.* (quoting *Cunningham v. Cornell Univ.*, 2017 WL 4358769, at * 4 (S.D.N.Y. Sept. 29, 2017).

("SIA").  ¶ 63; *see also* Gyandoh Decl., Exhibit C (MassMutual Menu of Available Investment Options as of 11-15-2018), at p. 1 ("MassMutual also maintains multiple SIAs or sub-accounts of SIAs that invest in the same share class of a mutual fund, but will have a different expense ratio and provide different levels of revenue sharing to MassMutual as a result of the application of different fee amounts at the SIA or sub-account level (referred to as a "wrap fee.").[11]  Generally, products rebranded by insurance companies such as Mass Mutual are targeted at smaller investors with less bargaining power, while the underlying investments which do not bear the Mass Mutual name are targeted at institutional investors with more assets.  Defendants reject the notion that these SIAs bear the MassMutual name (*see* Defs. Mem. at 4, 7).  Their argument simply relies on semantics.  They do not and cannot dispute the substance of the allegation which is that MassMutual sold the Plan more expensive versions of funds as SIAs.

### 2. Five of the Plan's Funds with Substantial Assets Had Identical Lower Cost Alternatives

Several funds in the Plan had identical lower share counterparts that were never selected by the Plan's fiduciaries.  *Id.* at ¶ 69.  (listing 5 total funds – MM Total Return Bond, MM International Growth, MM Developing Mkts, MassMutual

---

[11]  The "Menu," cited in the Complaint is also available publicly at https://www.appleone.com/federalgovernment/PDFs/benefits/2019/401k/Mass-Mutual-401k-Plan-Investment-Options.pdf

Premier Infl-Prot and Inc, and MM Templeton Global Bond).  The lower cost funds were identical in all ways except price and cost anywhere from *21%* (in the case of the MassMutual Premier Infl-Prot and Inc) to *74%* (in the case of the MM Total Return Bond) less than the funds selected and maintained in the Plan by Defendants. *Id.*  The alternative funds are identical in every respect except that they are not MassMutual SIAs. Accordingly, the lower share classes for the 5 funds had greater net returns than their more expensive counterparts.

### 3.  Defendants Failed to Timely Investigate Availability of Lower Cost Collective Trusts

There is little dispute between the parties on the salient facts regarding the Plan's target date offering.  From 2014 through 2016 the Plan was invested in the Mass Mutual version (*i.e.* SIA) of the American Century One Choice target date funds.  ¶ 86, n. 10; *see also* Defs. Mem. at 8.  The Plan had sufficient assets under management in 2014 to 2016 to have switched to the American Century Retirement CIT target date funds as soon as they were available in mid-2014.  *Id.*  Since the Plan had over 500 million dollars invested across all target date funds in 2017 and 2018, it could have qualified for the class IX share CIT with an expense ratio of only .23% which the Plan did in fact switch to in late 2018.  ¶¶ 79, 86, n. 10.  There was no prohibition in selecting these CITS given that the Plan Document stated "[p]lan assets may also be invested in a common/collective trust fund … ." ¶ 79 (citing Plan Doc. at 110).  Even when the Plan's fiduciaries selected the American

Century CITS, the CITs had excessive expense ratios because Mass Mutual offered them as SIAs which unnecessarily tacked on additional costs. The Mass Mutual SIA had an expense ratio of .70% while the identical American Century version had an expense ratio of only .23%, a difference of 204%. ¶ 81. It was not until September of 2018 that Defendants belatedly switched to the non-SIA American Century CIT target date funds. Defs. Mem. at 8.

## 4. Many of the Actively Managed Funds in the Plan had Lower Cost, Better Performing, Actively Managed Alternatives

As a further indication of an imprudent monitoring process, the expense ratios of some the Plan's actively managed investment options (including the MM International Growth and MM Templeton Global Bond funds for which lower cost share classes also existed) were more expensive by multiples of comparable alternative funds in the same investment style. *Id.* at ¶ 90 (showing that the Plan's fees were in some instances up to 1,675% more expensive than other comparable funds). The alternative funds also had better performances than the Plan's funds in their 1-, 3-, and 5- year average returns when comparing the Plan's funds and alternatives to recognized benchmarks. *Id.* at ¶ 91.

## 5. The Plan's Recordkeeping and Administrative Costs Were Excessive During the Class Period

The Plan's recordkeeper during the Class Period was MassMutual.  ¶ 93.[12]
Based on market surveys and evidence gathered in analogous lawsuits, the Plan with
nearly 40,000 participants was capable of obtaining per participant recordkeeping
fees in the $21 - $35 range.  ¶¶ 99-100.  In a survey conducted by a reputable
consultant, no plan with over 15,000 participants paid more than $65-70 per
participant in recordkeeping. ¶ 102.  Rather than negotiate a low cost per participant
recordkeeping fee, Defendants utilized revenue sharing which resulted in an annual
per participant cost ranging from $69.93 to $115.41 (combined direct and indirect
compensation) during the Class Period.  ¶ 96.  Such costs – even the supposed $42
per participant fee Defendants obtained in September 2018 - are well above the fees
a billion dollar/40,000 participant plan like the Plan could have garnered in the
market-place.  Indeed, the Plan ultimately and belatedly obtained a $23 per-
participant fee in September 2019.

## IV.   ARGUMENT

### A. Plaintiffs Have Standing to Challenge Funds in Which They Did Not Personally Invest

Defendants do not dispute that Plaintiffs have satisfied constitutional standing
with respect to at least one of the funds at issue in this case and in which they were

---

[12] It is unclear the role played by Hannah Global Solutions, Inc. which is coded as a recordkeeper on the Plan's Form 5500.  For purposes of Plaintiffs' current allegations, the cost of recordkeeping and administration is what is at issue, not necessarily the identity of the recordkeeper(s).

invested.  Defs. Mem. at 13.  Instead, Defendants ask the Court to dismiss the claims related to the "Active Options" in which Plaintiffs did not personally hold in their plan accounts.  *See id*.  Defendants' argument, however, ignores the fundamental character of ERISA breach of fiduciary duty claims; particularly, that a suit under 29 U.S.C. §1132(a)(2) is "brought in a representative capacity on behalf of the plan as a whole," and remedies under §1109 "protect the entire plan."  *Braden*, 588 F.3d at 593.  Thus, plaintiffs in an ERISA case like this one may seek recovery on behalf of the **entire plan**, even if they did not personally invest in every one of the funds that caused injury.  *See Braden*, 588 F.3d at 593.

Plaintiffs indisputably suffered injuries that were caused by Defendants' fiduciary breaches including the payment of excessive investment management and recordkeeping/administrative fees, among others.  These injuries accord Plaintiffs standing to pursue the Plan's losses caused by Defendants' **related** conduct concerning funds in which Plaintiffs were not invested.  *See, e.g.*, *McCool v. AHS Management Company, Inc.*, 2021 WL 826756, at *3 (M.D. Tenn. March 4, 2021) ("Courts have recognized that a plaintiff who is injured in his or her own plan assets – and thus has Article III standing – may proceed under Section 1132(a)(2) on behalf of the plan or other participants even if the relief sought sweeps beyond his own injury."); *Hay v. Gucci America, Inc.*, 2018 WL 4815558, at *4 (D.N.J. Oct. 3, 2018) ("Plaintiff here alleges an injury rooted in Defendants' conduct in managing all the

funds as a group.")(internal quotation omitted).   The overwhelming majority of courts have rejected Defendants' standing argument.[13]

Further, Defendants' reliance on *Thole v. U.S. Bank N.A.*, 140 S.Ct. 1615 (U.S. June 1, 2020) is entirely misplaced.   *Thole* involved a defined benefit plan, unlike the Cognizant Plan, which is a defined contribution plan.   Justice Kavanaugh stated this distinction was "[o]f decisive importance to this case."   *Id.* at 1618.   He further observed that, among other things, "[t]he basic flaw in the plaintiffs' trust-based theory of standing is that the participants in a defined-benefit plan are not similarly situated to the beneficiaries of a private trust or to the participants in a defined-contribution plan."   *Id.* at 1619.   Because "in the private trust context, the value of the trust property and the ultimate amount of money received by the beneficiaries will typically depend on how well the trust is managed, so every penny of gain or loss is at the beneficiaries' risk."   *Id*; *see also Boley Universal Health Services, Inc.*, 2020 WL 6381395, *6 (E.D. Pa. Oct. 30, 2020) (quoting *Thole*, 140 S. Ct. at 1618)

---

[13] *See, e.g.*, *Sacerdote v. New York Univ.*, 2018 WL 840364, at *7 (S.D.N.Y. Feb. 13, 2018)("[W]hile not every member of the class participated in the challenged fund options, the alleged foregone opportunities from funds that were not included and the alleged reduction in choice that resulted is an alleged injury in fact.")(citation omitted); *Urakhchin Allianz Asset Mgmt. of Am., L.P.*, 2016 WL 4507117, at *4 (C.D. Cal. Aug. 5, 2016)("Due to [defendants'] alleged misconduct, Plaintiffs were unable to select low-cost options when investing in the Plan."); *Larson v. Allina Health System*, 350 F.Supp.3d 780,792 (D. Minn. 2018) (same); *Johnson v. Providence Health & Services*, 2018 WL 1427421, at * 4 (W.D. Wash. March 22, 2018) (same); *Johnson et al. v. Fujitsu Tech. and Bus. of Am., Inc.*, 250 F.Supp. 3d 460, 465 (N.D. Cal. Apr. 11, 2017) (same).

("the Fiduciaries err in arguing the nature of the plan was 'irrelevant' to the Court's standing analysis."); *Parmer, et al. v. Land O'Lakes, Inc., et al.*, 2021 WL 464382 (D. Minn. Feb. 9, 2021) (same).[14]

Here, Plaintiffs allege "Defendants' breaches of their fiduciary duties, relating to their overall decision-making, resulted in *inter alia*, the selection (and maintenance) of several funds in the Plan throughout the Class Period, including those identified below, that wasted the assets of the Plan and the assets of participants because of unnecessary costs." ¶ 62. Accordingly, Defendants are wrong to suggest "the value of Plaintiffs' accounts did not turn on the challenged investment decisions as to the Active Options…." Defs. Mem. at 15.[15]  Unlike in *Thole*, the ultimate

---

[14] *See also Crawford, et al., v. CDI Corporation, et al.*, No. 2:20-cv-3317-CFK (ECF No. 13) (E.D. Pa. Nov. 5, 2020).  In *Crawford*, defendants similarly argued in Defendants' Motion for Partial Dismissal of Plaintiffs' Claims that the named plaintiffs cannot challenge the investment options in which they did not personally invest based on the Supreme Court's analysis in *Thole v. U.S. Bank, N.A.*, 140 S. Ct. 1615, 1622 (2020).  Defendants' Motion for Partial Dismissal of Plaintiffs' Claims, *Crawford, et al., v. CDI Corporation, et al.*, No. 2:20-cv-3317-CFK (ECF No. 8) (E.D. Pa. Sept. 28, 2020).  On November 5, 2020, the court in *Crawford* rejected defendants' arguments and issued an Order denying Defendants' Motion for Partial Dismissal of Plaintiffs' claims.

[15] The cases Defendants cite do not counsel otherwise.  In *Anderson v. Intel Corp.*, the court found plaintiffs did not have standing to advance claims alleging breach of the duty of prudence by the administrative committee for failing to make accurate and adequate disclosures in documents allegedly provided to the participants regarding the plans.  2021 WL 229235, at *13-14 (N.D. Cal. Jan. 21, 2021).  The court determined plaintiffs failed to allege an injury-in-fact with respect to those two particular claims because the plaintiffs failed to allege they "read or relied upon the allegedly defective documents." *Id.* at *14.  *Gonzalez de Fuente v. Preferred Home Care of New York, LLC* is not instructive because, like in *Thole*, the plan at issue

recovery received by Plan participants here depends on "how well the trust is managed" and thus confers standing on Plaintiffs to bring suit to challenge Defendants' fiduciary process.[16]   Simply put, contrary to Defendants' assertions, "Plaintiffs do not need to make a showing of investment in each fund to demonstrate

---

was a defined benefit plan, not a defined contribution plan. 2020 WL 5994957, at *3 (E.D.N.Y. Oct. 9, 2020). The claims in *Bryant v. Wal-Mart Stores, Inc.* involved a defective COBRA notice and are wholly dissimilar to Plaintiffs' breach of fiduciary duty claims here. 2020 WL 4333452, at *1 (S.D. Fla. July 15, 2020). Defendants also rely on *David v. Alphin* where the plaintiffs failed to sufficiently allege that they suffered *any injury at all* as a result of defendants' alleged misconduct. *See David v. Alphin*, 817 F. Supp. 2d 764 (W.D.N.C. 2011) (neither plaintiff invested in the single challenged fund and summary judgment was granted for defendants on all other claims). Of course, if a plaintiff does not allege they have suffered any injury at all, they do not have standing under Article III. *Ortiz v. American Airlines, Inc.* is not helpful to Defendants' arguments at all because the plaintiffs – like Plaintiffs here – established Article III standing by alleging losses due to the defendants' selection of imprudent investments. 2020 WL 4504385, at *13 (N.D. Tex. Aug. 5, 2020).

[16]Grasping at straws, Defendants cite to *Patterson v. Morgan Stanley*, No. 16-cv-6568, 2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019). Defs. Mem. at 13. Yet, less than a year after the *Patterson* decision was issued, a court in the same judicial district recognized, "*Patterson* is an outlier; the majority of courts considering similar cases both in this district and elsewhere are consistent with [*Leber*]," finding standing under these circumstances. *Falberg v. Goldman Sachs Group, Inc.*, 2020 WL 3893285, at *8 (S.D.N.Y. July 9, 2020). *Dezelan v. Voya Ret. Ins. & Annuity Co.*, 2017 WL 2909714, at * 1 (D. Conn. July 6, 2017) is inapposite because it involved challenges to specific funds as opposed to the process utilized by defendants that resulted in selection of several imprudent funds, including ones invested in by plaintiffs. To the extent *Wilcox v. Georgetown Univ.*, 2019 WL 132281, at * 10 (D.D.C. Jan. 8, 2019) supports Defendants' position, it is an outlier.

standing." *Cunningham v. Cornell Univ.*, No. 16-cv-6525 (PKC), 2019 WL 275827, at *3 (S.D.N.Y. Jan. 22, 2019) (collecting cases).[17]

**B. The Totality of Plaintiffs' Allegations Plausibly State A Claim for Breach of the Fiduciary Duty of Prudence in Count I**

**1. The Precedent of Both the Third Circuit and This District Court Support Plaintiffs' Claims**

*Sweda* is the Third Circuit's most recent decision regarding the pleading requirements for "excessive fee" claims. The decision touched on a number of principles that are applicable here and which Defendants ignore.

*First*, "Fiduciaries must … consider a plan's 'power ... to obtain favorable investment products, particularly when those products are substantially identical— other than their lower cost—to products the trustee has already selected.'" 923 F.3d 328-29 (citing *Tibble*, 843 F.3d at 1198).

---

[17] In support of their arguments, Defendants rely on the Third Circuit's holding in *Perelman v. Perelman*, where the court upheld summary judgment on claims arising out of a defined benefit plan where participants "are entitled only to a fixed periodic payment, and have no 'claim to any particular asset that composes a part of the plan's general asset pool.'" *Perelman v. Perelman*, 793 F.3d 368, 374 (3d Cir. 2015) (citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 440 (1999)). In *Sweda*, the Third Circuit distinguished the claims advanced by participants in a defined benefit plan from the claims of participants – such as the Plaintiffs here – in a defined contribution plan. *Sweda*, 923 F.3d 320, n. 10 (citing *Perelman*, 793 F.3d at 376, n. 6) ("[t]here is no question that representative suits by plan participants or beneficiaries against fiduciaries for breach of fiduciary duty are permitted by, and generally brought under, ERISA § [1132(a)(2)].")

*Second*, "Many allegations concerning fiduciary conduct, such as reasonableness of 'compensation for services' are 'inherently factual question[s]' for which neither ERISA nor the Department of Labor give specific guidance." *Id.* at 329 (citing DOL Advisory Opinion 2013-03A, 2013 WL 3546834, at *4-5).

*Third*, "while fiduciaries have discretion in plan management, that discretion is bounded by the prudent man standard.  Discretion 'does not mean ... that the legal standard of prudence is without substantive content or that there are no principles by which the fiduciary's conduct may be guided and judged,' rather a fiduciary's conduct at all times 'must be reasonably supported in concept and must be implemented with proper care, skill, and caution.' Fiduciary discretion must be exercised within the statutory parameters of prudence and loyalty." *Id.* at 333 (quoting Restatement (Third) of Trusts § 90 (2007), cmt. f.)

*Fourth*, *Sweda* makes clear the Third Circuit's prior decision in *Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir. 2011) cannot be weaponized to dispose of plausibly pled allegations just because a defendant does not like being sued:

> Penn's solution is to interpret *Renfro* to mean that if a plan fiduciary provides a 'mix and range of investment options,' plaintiffs cannot plausibly allege breach of fiduciary duty.
>
> *****
>
> Despite our appreciation of Penn and amici's fear of frivolous litigation, if we were to interpret *Renfro* to bar a complaint as detailed and specific as the complaint here, we would insulate from liability every fiduciary who, although imprudent, initially selected a 'mix and range' of

investment options. Neither the statute nor our precedent
justifies such a rule.

*Sweda*, 923 F.3d 333-34.

Here, Plaintiffs' primary allegations mirror allegations in *Sweda*, among
which were allegations that  (1) "despite the availability of low-cost institutional
class shares, Penn selected and retained identically managed but higher cost retail
class shares;" (2) included "a table comparing options in the Plan with the readily
available cheaper alternatives" and (3) "Penn could have assessed the reasonableness
of Plan recordkeeping fees by soliciting competitive bids, but, unlike prudent
fiduciaries, failed to do so." *Sweda*, 923 F.3d at 330-331.  *See* Complaint, ¶¶ 69, 82,
90-91, 106-108 (allegations that include, *inter alia*, (1) a table comparing
investments in the Plan with identical cheaper alternatives, (2) a table comparing
investments in the Plan with materially similar cheaper alternatives and (3)
allegations that the fiduciaries failed to conduct requests for proposals to obtain the
best recordkeeping fees).  *See also supra* Section III.A.2.

Similarly, in the recent *Pinnell* decision, the court found allegations similar to
the ones here to "much more closely resemble[] the allegations our Court of Appeals
held survived dismissal in *Sweda* than the allegations in *Renfro*."  *Pinnell*, 2020 WL
1531870, at * 5.  The *Pinnell* plaintiffs supported their allegations of imprudent plan
management with "comparative" tables and citation to comparative studies identical
to those pled in this case.  *See Pinnell et al. v. Teva Pharmaceuticals USA, Inc. et*

19

*al.*, No. 2:19cv05738-MAK, ECF 10 (amended complaint), at ¶¶ 80, 87-88, 90, 101, 109.  The court dismissed defendants' motion to dismiss *in toto*.  *See* Pinnell, 2020 WL 1531870 at * 5.  At the heart of *Pinnell*, like here, was the defendants' failure to timely consider switching the plan's target date funds to less expensive identical share classes.  *See Teva* Amended Complaint at ¶ 99.

The allegations in Plaintiffs' Complaint also resemble the plaintiffs' allegations in *Silva v. Evonik Corp.,* No. 20-2202, slip op. (D.N.J. Dec. 30, 2020) wherein a court in this district upheld analogous claims against fiduciary defendants. In *Evonik*, the Court reasoned that based on plaintiffs' citations to "news articles, academic scholarship and specific examples of cheaper investment funds," plaintiffs adequately claimed defendants breached their duty of prudence.  *Evonik*, at p. 6 (cites to record omitted).[18]  As in *Evonik*, Plaintiffs' Complaint alleges analogous facts, comparisons to specific examples of lower cost funds and alternatives, and citations to various articles, academic scholarship, and the median fees published by the Investment Company Institute and the fees of alleged competitors.  *See* Complt., ¶¶ 63-92.

---

[18] *See* Gyandoh Decl. Ex. A; *see also Bouvy v. Analog Devices, Inc.*, 2020 WL 3448385, at * 2 (S.D. Cal. June 24, 2020) (upholding allegations that "the Plan's investment expenses were higher than industry averages: at least 18 of the 20 mutual funds offered in 2016 had above-average expenses.").

Finally, this case is unlike *Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir. 2011) because that case tackled a different claim than the one at issue here.  It addressed plan design, something Plaintiffs do not challenge in this case.  Rather, Plaintiffs' primary claim is that the Plan's fiduciaries offered more expensive versions of available identical investments.

### 2. ERISA Requires Selection of Lower-Cost Alternatives When They Are Identical to Higher-Cost Alternatives

Plaintiffs' primary claim is that Defendants failed to offer available identical lower-cost alternatives to the Plan's investments.  As described above (*see* Section III.A.1), through a process of "branding" MassMutual added unnecessary costs to funds the Plan could have obtained in the marketplace at a lesser cost.  Contrary to Defendants' statements, the November 15, 2018 Menu that describes this process is available publicly (*see* n. 12) and is attached to the Gyandoh Decl. as Exhibit C. Tellingly, although Defendants dispute the term "branding" they do not dispute the substance of the allegations.  Defs. Mem. at 26-27.   Relying on MassMutual's 2018 Menu, the 2018 Auditor Report, and the summary prospectuses, Plaintiffs allege "MassMutual engages in a rebranding process whereby it contracts with providers of mutual funds to offer each provider's funds by only as a MassMutual product." ¶¶ 63-66.  Plaintiffs allege "[t]here is no difference between the underlying mutual fund and the rebranded MassMutual product.  The funds hold identical investments, have the same managers, risk return profiles and investment strategy."  ¶ 67.

Plaintiffs provide specific examples of at least five of the Plan investment options (during 2018) for which Defendants could have switched to the lower cost funds not rebranded by Mass Mutual.  *See* ¶ 69 (listing funds).  Fee discrepancies in some instances were as much as 74% excess.  *Id*.  Plaintiffs allege that selecting the higher cost investments reduces the likelihood that participants achieve their preferred lifestyle in retirement.  ¶ 73.  As *Sweda* stated, "[r]ecognizing the substantial impact of a fiduciary's choice among fee options, the Ninth Circuit, in *Tibble v. Edison Int'l (Tibble II)*, affirmed the district court's finding that the plan fiduciary's inclusion of retail class shares of three funds when institutional class shares of the same funds were available for 24 to 40 fewer basis points, was a fiduciary breach."  *Sweda* at 328.  *See also Tibble*, 843 F.3d at 1190 (recognizing additional fees of only 0.18% or 0.4% can have a large effect on a participant's investment results over time because "[b]eneficiaries subject to higher fees … lose not only money spent on higher fees, but also lost investment opportunity; that is, the money that the portion of their investment spent on unnecessary fees would have earned over time.").

Virtually every court to consider a plan's retention of a more expensive share class when a cheaper share class was available has held that it gives rise to a plausible claim for breach of fiduciary duty.  Recently, the Eighth Circuit found that failure to gain access to cheaper identical funds is a "failure of effort [or] competence" and "is

22

enough to state a claim for breach of the duty of prudence." *Davis et al. v. Washington U.* 960 F.3d 478, 483 (8th Cir. 2020).[19]  In upholding similar claims as here, *Pinnell* noted that plaintiffs plead "a table listing at least twelve investment options for which the Plan fiduciaries could have switched to lower-fee share classes, in addition to numerous other comparisons." *Id.* 2020 WL 1531870, at * 5. The Court in *Hay* similarly found that "regardless of whether the mix and range of investment options and overall expense ratios for the Plan's investment options are reasonable, the Court finds that *Renfro* does not, at this preliminary juncture, sustain dismissal of this matter, as Plaintiff contests Defendants' selection and retention of certain funds."  2018 WL 481558, at * 6.   The *Nicolas* court also found when analyzing similar allegations, including that defendants failed "to use significant bargaining power to negotiate lower fees," that "[a]ccepting as true the facts alleged in the Complaint and giving Plaintiff every favorable inference therefrom, Plaintiff's

---

[19] *See also Terraza v. Safeway*, 241 F.Supp.3d 1057, 1075 (N.D. Cal. Mar. 13, 2017) (upholding claim where "at least with respect to one of the investment options offered by the Plan, the only difference between the option that was offered and the option that allegedly should have been offered was price."); *Disselkamp, et al. v. Norton Healthcare, Inc. et al*., 2019 WL 3536038, at * 4 (W.D. Ky. Aug. 2, 2019) (recognizing that "Courts examining this issue have concluded that investment in a retail class fund where an identical institutional class fund with lower fees is available can violate the duty of prudence."); *Johnson et al. v. Fujitsu Tech. and Bus. of Am., Inc.*, 250 F.Supp. 3d 460, 466-67  (N.D. Cal. Apr. 11, 2017) (holding that plaintiffs' allegations regarding share classes supported a claim for breach of fiduciary duty); *Brotherston v. Putnam Investments LLC*, 2016 WL 1397427, at *1 (D. Mass. April 7, 2016) (same); *See also* n. 3 and 5 *supra* listing decisions that have upheld similar allegations.

Complaint states a claim for relief." 2017 WL 4455897, at *4. Further, just like the plaintiffs in *Kruger et al. v. Novant Health, Inc.*, "Plaintiffs are not arguing that Defendants had a duty to scour the market to find and offer any cheaper investment. Instead, Plaintiffs allege that 'lower cost funds with the identical managers, investments styles, and stocks" (sic) should have been considered by the Plan.'" 131 F.Supp.3d 470, 476 (M.D.N.C. 2015).

Plaintiffs anticipate Defendants will argue in their reply that the excess costs added to the funds by MassMutual were utilized to pay for recordkeeping and thus justified. Courts have repeatedly rejected this argument. In *Disselkamp*, "[d]efendants argue[d] this claim must be dismissed because Defendants applied the higher fees collected from the retail class funds to pay administrative fees through revenue-sharing." 2019 WL 3536038, at *5. The court rejected this argument because it was "not suited for a decision on a motion to dismiss." *Id.* It also noted that "while the revenue-sharing argument may eventually mitigate liability and damages, it still remains to be seen whether Defendants prudently investigated the higher share class investments before subjecting Plan participants to those higher fees." *Id. See also Rohan v. Saint Luke's Health System, Inc., et al.,* 2020 WL 8410451, at *6 (W.D. Mo. June 22, 2020) (rejecting "Defendants' causation argument" where defendants sought to raise the Plan's need for revenue sharing as the reason for retaining higher-cost share classes); *Silva, et al. v. Evonik, et al.*, slip

24

op. fn 15 (citing *Sweda*, 923 F.3d at 326) ("To the extent Defendants argue that Plaintiffs must allege additional facts, such as whether the higher cost share class offered any additional benefits, the Court disagrees.  Plaintiffs need not 'rule out every possible lawful explanation' for the challenged conduct in the Complaint.")

### 3.  ERISA Required Defendants to Timely Offer CITs

Defendants distort the Complaint's allegations regarding the failure to offer reasonably priced CITs almost to the point of non-recognition.  This claim also asserts the failure to select lower share classes of identical funds.

First, the Plan allowed the fiduciaries to select CITs as investments under the Plan.  ¶ 79 (citing Plan Doc. at 110).  Accordingly, Defendants' argument, and the cases they rely on, that ERISA does not require any particular mix of investments is misplaced in this context where the Plan itself allowed for the investments.   In *Evonik*, this district determined plaintiffs' allegations that "Defendant's failed to investigate the availability of collective trusts or separate accounts, which are 'materially similar but cheaper alternatives' to the mutual funds in the Plan" as one facet of the complaint that when "[v]iewed holistically, the Complaint's allegations likewise provide circumstantial evidence and 'meaningful benchmarks' sufficient to withstand the instant Motion."  (internal quotations and cites to record omitted). *See also  Tracey v. MIT*, 2017 WL 4453541, at * 11 (D. Mass. Aug. 31, 2017) (upholding claim that defendants failed to use "separate accounts, or collective trusts"); *In re*

*M&T Bank Corp. ERISA Litig.*, 2018 WL 4334807, at * 9 (W.D.N.Y. Sept. 11, 2018) (upholding claim that fiduciaries failed to switch to a materially similar collective trust); *see generally Pinnell* (upholding allegations defendants failed to consider collective trusts).

The fact is CITs are favorable investment products, *see* ¶ 82, that should have been considered by Defendants by the start of the Class Period. *Sweda*, 923 F.3d at 329 (fiduciaries must consider "favorable investment products, ***particularly when those products are substantially identical—other than their lower cost*—**to products the trustee has already selected") (emphasis added). Defendants' argument that mutual funds and collective trusts "differ so significantly" that Plaintiffs' comparison of the cost of the two types of investment vehicles is "inherently implausible," Defs. Mem. at 18, raises issues of fact that require assessment on a more developed record.[20]   *See Evonik*, at p. 7 (quoting Nic*olas v. Trustees of*

---

[20] Defendants rely on *Davis v. Salesforce.com* in their argument Plaintiffs failed to allege Defendants acted imprudently in their selection of the higher cost funds. Defs. Mem. at 17-18. Relying on precedent outside the Third Circuit, the court in *Davis* failed to consider the totality of the allegations as set forth in plaintiffs' complaint as a whole and instead, isolated each allegation in its conclusion it was "not persuaded by the reasoning" of "the cases on which plaintiffs rely [that] have held allegations identifying lower-cost share classes are, without more, sufficient to state a claim for imprudence." *Davis v. Salesforce.com, Inc.*, 2020 WL 5893405, at *5 (N.D. Cal. Oct. 5, 2020). Such a decision is wholly out of line with the Third Circuit's evaluation of a plaintiff's claims at the motion to dismiss stage. Additionally, in *Larson v. Allina Health Sys.*, 350 F.Supp.3d 780, 796 (D. Minn. 2018) it appears the ultimate basis for the court's decision was that "Allina's 403(b)

*Princeton Univ.*, No. 17- 3695, 2017 WL 4455897, at *5 (D.N.J. Sept. 25, 2017))("an inquiry into "whether the alternative funds Plaintiff[s] suggest[ ] are apt comparisons" is a question of fact unsuitable for resolution on a motion to dismiss.)

Second, Defendants proffer "that the Plan did in fact include CIT target date funds beginning in 2017" (referring to the MM American Century target date funds), Defs. Mem. at 18, but that does not excuse Defendants' failure to select these target date funds in mid-2014 when they were available (*see* discussion *supra*) nor their failure to select the cheaper versions of the target date funds until September 2018 (*see* discussion *supra*).   Defendants' suggestion that "Plaintiffs do not cite to any authority for their demand that fiduciaries must move to the least expensive funds in the market 'as soon as they are available,' and no such authority exists" is incorrect. Defs. Mem. at 19.   In fact, paragraph 59 of the Complaint cites to the Supreme Court's conclusion in *Tibble* that "under ERISA a fiduciary 'has a continuing duty to monitor [plan] investments and remove imprudent ones' that exists 'separate and apart from the [fiduciary's] duty to exercise prudence in selecting investments.'"   ¶ 59 (citing *Tibble I*, 135 S. Ct. at 1828).   Accordingly, a fiduciary has the constant duty to replace imprudent investments.   *See also Tibble v. Edison Int'l*, 2017 WL 3523737, at * 12 (C.D. Cal. Aug. 16, 2017) ("Because the institutional share classes

---

Plan is actually prohibited by law from offering such investments, which Plaintiffs concede." The Plan here is of course not a 403(b) plan.

are otherwise *identical* to the retail share classes, but with lower fees, a prudent fiduciary would know **immediately** that a switch is necessary) (italicized emphasis in original; bolded emphasis added).

The mere fact Defendants eventually moved the funds into CITs also does not give rise to a presumption of prudence because the action should have been taken earlier. *Johnson et al. v. Fujitsu Technology and Business of America, Inc.*, 250 F.Supp.3d 460, 466 (N.D. Cal. Apr. 11, 2017) (upholding allegation of fiduciary's "failing to promptly remove imprudent investments and the target-date funds more broadly when it was apparent that each was imprudent"); *Wildman*, 237 F. Supp. 3d at 915.[21]  Defendants simply cannot get a pass for the four years until 2018 where they failed to select the cheapest version of the American Century target date funds. *See also* Section IV.B.2 (discussing avalanche of decisions supporting a lower share class allegation).

Defendants' argument only underscores the fact there are disputes of fact in this action that cannot be resolved at this stage. *Sweda*, 923 F.3d at 329.  The timing of Defendants' alleged removal of the challenged funds and whether they were

---

[21] *Meiners v. Wells Fargo & Co.*, 898 F.3d 820 (8th Cir. 2018) did not involve comparison of plan funds to identical but cheaper priced funds like this case.

replaced with appropriate alternatives has no bearing on the adequacy of Plaintiffs'
allegations to survive a motion to dismiss and should not be considered at this time.

### 4. Defendants Failed to Consider Other Lower Cost, Better Performing Actively Managed Investment Options

Defendants also take issue with the Complaint's allegation regarding the
Defendants' failure to consider cheaper, better performing actively managed
alternatives than some of the actively managed funds in the Plan. Defs. Mem. at 21-
25. Again, these allegations are secondary and complement the primary allegation
that the Defendants utilized an imprudent process given that so many of the funds
were in the wrong share class. Paragraph 90 of the Complaint includes several
cheaper, yet superior performing actively managed lower cost alternatives.
Paragraph 90 compares the Plan's investments with other comparable active
investments within the same investment style, thereby "provid[ing] a sound basis
for comparison—a meaningful benchmark" as the Eighth Circuit stated in *Meiners
v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018) (noting the plaintiff in
*Braden* alleged, *inter alia*, the market index). Through this comparison, Plaintiffs
plausibly allege that comparable investments would have yielded better results for
Plan participants because of their lower fees. *See, e.g., Pinnell,* 2020 WL 1531870,
at *6 (upholding materially similar allegations).

Plaintiffs list lower cost alternative funds to the Plan's current funds that cost
from 24% to 1,675% less than the Plan's funds. ¶ 90. *See Feinberg*, 2018 WL

3970470, at *5 (upholding allegations "of comparable funds showing that the Plan's funds' expense ratios ranged from 16% to 2,500% higher than the comparable funds."). The Complaint also alleges the alternative funds outperformed the Plan's funds in their 1-, 3-, and 5- year average returns. ¶ 91. *See Cunningham*, 2017 WL 4358769, at *7 ("Plaintiffs' allegations that specific funds underperformed over one, five and ten year periods and that lower-cost, higher performing investments were available plausibly states a claim.")

Defendants' attacks are simply unfounded. First, Defendants' attack on Plaintiffs' use of 2020 expense ratios to illustrate the percentage differences between various funds is off-mark. Defs. Mem. at 21. The Complaint uses 2020 expense ratios for all the funds it compares in order to maintain an apples to apples comparison. *See, e.g.,* ¶ 90 (demonstrating the excess expense in terms of percentages between the different funds in the Plan and the active lower cost alternative). These discrepancies existed throughout the Class Period and Defendants do not argue otherwise. *See Evonik*, at p. 7 ("the relevant inquiry is whether the Investment Committee prudently investigated cheaper alternative investments, regardless of the degree of savings.").

Second, Defendants proffer a slew of additional facts, such as their assertion "the Active Options had positive performance during the Class Period," Defs. Mem. at fn 21, which only underscores the fact there are disputes of fact in this action that

cannot be resolved at this stage. *Sweda*, 923 F.3d at 329. The point of the allegations is that other lower cost and better performing funds should have been investigated. *See Marshall v. Northrop Grumman Corp.*, 2019 WL 4058583 at * 10 (C.D. Cal. Aug. 14, 2019) ("[a] trier of fact could reasonably view the [investment committee's] evaluations and discussions in Investment Committee meetings **insufficient** to disprove a breach of Defendants' fiduciary duties because the Investment Committee failed to adequately weigh the costs and benefits of an active management strategy against a passive management strategy.") (emphasis added).

Third, Defendants (and case law they rely on) contend that Plaintiffs' alternatives were not, in fact, comparable. Defs. Mem. at 23-26.[22] Courts have

---

[22] Defendants rely on *Meiners v. Wells Fargo & Co.* in support of their argument "Plaintiffs are not permitted 'to dodge the requirement for a meaningful benchmark by merely finding a less expensive alternative fund or two with some similarity.'" Defs. Mem. at 23 (citing *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018)). "In *Meiners*, the Eighth Circuit found that underperformance in comparison to a meaningful benchmark is itself circumstantial evidence of a flawed fiduciary process, not a separate requirement as defendants claim." *Karg*, 2019 WL 3938471, at * 6. However, in *Meiners*, the plaintiff "only pled that one Vanguard fund […] performed better than the Wells Fargo TDFs" in the plan and the court concluded "[t]he fact that one fund with a different investment strategy ultimately performed better does not establish anything about whether the Wells Fargo TDFs were an imprudent choice at the outset." *Meiners*, 898 F.3d at 823. Here, Plaintiffs compare several of the Plan's funds to "superior performing less expensive alternatives available." ¶ 90. *Anderson v. Intel Corp.*, 2021 WL 229235 (N.D. Cal. Jan. 21, 2021), wherein the court applied Ninth Circuit precedent in its dismissal of plaintiffs' complaint, is similarly not instructive of this district's wholistic assessment of plaintiffs' complaint at the motion to dismiss stage. Further, Defendants' reliance on *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Medical Centers Retirement Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705

rejected this argument as premature.  *See Evonik Corp.*, No. 20-2202, slip op. 3 of 11 (quoting *Nicolas*, 2017 WL 4455897, at *5) ("an inquiry into 'whether the alternative funds Plaintiff[s] suggest[] are apt comparisons' is a question of fact unsuitable for resolution on a motion to dismiss").  In *Nicolas*, the court remarked that "Defendant raises factual questions about whether the alternative funds Plaintiff suggests ... are apt comparisons—and, therefore, whether the underperformance Plaintiff depicts is an accurate portrait ... Such questions do not warrant dismissal—to the contrary, they suggest the need for further information from both parties." 2017 WL 4455897, at * 5; *Cryer v. Franklin Templeton Resources Inc.*, 2017 WL 818788, at *4 (N.D. Cal. Jan. 17, 2017) (same); *see also Main*, 248 F.Supp.3d at 794.

### 5. Defendants Cannot Rely on a Purportedly "Array of Investments Charging A Reasonable Range of Fees"

At the district court in *Sweda*, defendants, represented by the same counsel here, argued that *Renfro* required dismissal of *Sweda* because *inter alia*:

> [T]he Plan's investment options, with expense ratios ranging from just 0.04% to 0.87%, are even cheaper than those at issue in *Renfro*.  Indeed, the Plan offers participants seventeen investment funds with expense ratios at or below 0.10% (the low-end of the range in *Renfro*) and just a single option charging more than 0.57% (barely half the high-end of the range in *Renfro*).

---

(2d Cir. 2013) a matter involving high-risk mortgage securities, is inapposite to Plaintiffs' claims here.

> Defendants can hardly be faulted for building an investment menu that is even better than the one the Third Circuit already approved.

*See Sweda et al. v. The University of Pennsylvania et al.*, No. 2:16-cv-4329 (E.D. Pa.), "Memorandum of Law in Support of Defendants' Motion to Dismiss for Failure to State a Claim" ECF 25-2 at 12.  Just like the *Sweda* defendants, Defendants here also argue "[t]he Plan offered around twenty-three investments across various asset types, with a range of expense ratios from 0.23% to 1.34% in 2015 and 0.03%-1.05% in 2020."  Defs. Mem. at fn 20.   Their argument has been rejected by the Third Circuit.  *See Sweda,* 923 F.3d at 333-34.  Other courts are in accord.[23]

### 6.  The Plan's Excessive Recordkeeping Fee Further Demonstrates Defendants Breached Their Duty of Prudence

"Many allegations concerning fiduciary conduct, such as reasonableness of 'compensation for services' are 'inherently factual question[s]' for which neither ERISA nor the Department of Labor give specific guidance."  *Sweda*, 923 F.3d at 329.  This case is no different.

---

[23] *See also Terraza v. Safeway*, 241 F.Supp.3d 1057, 1077 (N.D. Cal. Mar. 13, 2017) ("this approach would effectively carve out a presumption of prudence for expense ratios that fell within a certain range."); *Troudt*, 2017 WL 1100876, at *1 ("[h]eeding [] admonitions of [pertinent case law], the court cannot adopt defendants' proposal to dismiss Count I of the complaint on the theory that the plan's fee structure fell within a presumptively reasonable range of expense ratios.");  *Henderson v. Emory Univ.*, No. 16-cv-2920, 2017 WL 2558565 at *2 (N.D. Ga. May 10, 2017) (rejecting argument that "the Plans' investment options offer a range of expense ratios from .07% to 1.41%, and that many courts have found this range to be reasonable.").

First, Defendants state that Plaintiffs' calculations with respect to the Plan's per participant recordkeeping fees, which were calculated from information on the Plan's Form 5500, are wrong without further elaboration. Defs. Mem. at 29-30. To the extent that Plaintiffs made any errors of fact regarding the recordkeeping fee amounts, it was due to Defendants' opaque and contradictory reporting of Plan data in the Plan's publicly filed form 5500s. In *Evonik*, "the Court conclude[d] that any 'initial miscalculation based on lack of information' does not appear to be significant enough to thwart Plaintiffs' claim at the pleading stage…." *Id.* at 9 (citation omitted). *See also Pinnell*, 2020 WL 1531870, at *6 ("The participants also alleged excessive recordkeeping fees, a plausible allegation despite the participants' initial miscalculation based on lack of information.").

Additionally, Defendants argue the Plan's recordkeeping fees decreased within the last two years of the Class Period. Defs. Mem. at 30. Defendants raise issues of fact – whether the Plan's recordkeeping fees were reduced within the last two years of the Class Period and, if so, whether the allegedly reduced recordkeeping fees were prudent – which must be assessed on a more developed record and cannot be resolved at the pleading stage.[24]   Further, assuming *arguendo* the Plan's

---

[24] Defendants' cited decisions only reinforce the need to determine in discovery whether the Plan's fiduciaries prudently monitored the Plan's recordkeeping fees. For instance, *Sacerdote v. New York Univ.*, 328 F.Supp.3d 273, 313 n. 114 (S.D.N.Y. 2018), was a trial decision following months of discovery.

recordkeeping fees were reduced in 2018 and 2019, this Court can infer from these facts that the Plan's recordkeeping fees were excessive prior to 2018. *Creamer v. Starwood Hotels & Resorts Worldwide, Inc.*, 2017 WL 2909408, at *3 (C.D. Cal. May 1, 2017) (Because Starwood failed to exercise bargaining power to obtain lower fees for many years… "viewed in the light most favorable to Plaintiffs, the Court can infer from these facts that Starwood's recordkeeping and administrative fees were excessive prior to 2015 and are still excessive.").

Second, the argument that Plaintiffs fail to allege "the level of recordkeeping and administrative services provided to the Plan," Defs. Mem. at 31, has been consistently rejected by other courts considering similar motions to dismiss because of the factually intensive nature of the scope of services. *See, e.g.*, *Kruger*, 131 F. Supp. 3d at 479 ("While Defendants claim that Plaintiffs have not alleged facts regarding … the services provided, or how the fees charged to the Plan were excessive in light of those services, this court finds that those are the types of facts warranting discovery, and, therefore, dismissal at this stage is not appropriate"); *Krueger*, 2012 WL 5873825, at *20 (same).[25]

_____

[25] *Young v. GM Inv. Mgmt. Grp.*, 325 F. App'x 31, 33 (2d Cir. 2009) does not counsel otherwise. The court noted plaintiffs did not allege "specific services," but unlike here, plaintiffs in that action alleged "no facts concerning other factors relevant to determining whether a fee is excessive under the circumstances." Similarly, the court in *Kong II*'s finding "Plaintiffs 'do not allege any facts as to what would constitute a reasonable fee, or any facts suggesting that the fee charged by Capital Research is excessive in relation to the services Capital Research provides'" is wholly out of line

Third, Defendants misunderstand the relevance of the Complaint's reference to the *401k Averages Book* and NEPC Annual Survey.   Defs. Mem. at 33-34. Although the *401k Averages Book* studies smaller plans than the Plan, the resource is useful nonetheless because we can extrapolate from the data what a bigger plan like the Plan should be paying for recordkeeping.   That is because recordkeeping and administrative fees should ***decrease*** as a Plan increases in size.   ¶ 103.   For example, a plan with 200 participants and $20 million in assets has an average recordkeeping and administration cost (through direct compensation) of $12 per participant while a plan with over 2,000 participants and $200 million in assets has an average recordkeeping and administration cost (through direct compensation) of $5 per participant. *Id.* (citing *401k Averages Book* at pp. 95, 108).   As a billion dollar Plan with several thousand participants as of 2018, the Plan should not have been paying on average more money per participant than plans the fraction of its size.   *Id.*

As noted in the *401(k) Averages Book*, some plans pay recordkeepers additional fees on top of direct compensation in the form of revenue sharing. However, not all revenue sharing is paid to recordkeepers given that "revenue sharing' is divvied among all the plan's service providers which "***could include but are not limited*** to recordkeepers, advisors and platform providers." *401(k) Averages*

_____

with the pleading requirements of this District. *Kong v. Trader Joe's Co.*, 2020 WL 7062395, *6 (C.D. Cal. Nov. 30, 2020) (quoting *Kong v. Trader Joe's Co.*, 2020 WL 5814102, *5 (C.D. Cal. Sept. 24, 2020)).

*Book* p. 7, Answer to FAQ No. 14  (emphasis added).  Accordingly, Defendants are mistaken to suggest $165 is the average amount of recordkeeping fees.  Defs. Mem. at 34.  Defendants' argument also overlooks the fact that, assuming it were true, the $165 per participant average recordkeeping costs would be for $200m plans, not a plan the size of the Plan.  As noted above, as plan asset size increases, the costs per participant should decrease proportionally.

Similarly, recordkeeping fees are also based on the number of participants. Defendants argue other plans cited in the Complaint had larger assets than the Plan but are silent as the Complaint's comparison of the Plan to other plans with a similar number of participants that paid less in recordkeeping fees.  *See* ¶¶ 99-100.  The NEPC 2019 Defined Contribution Progress Report ("NEPC Report") determined that plan with over 15,000 participants paid on average $40 or less in per participant recordkeeping, trust and custody fees, while no plan with more than 15,000 participants paid more than $65-70 per participant for recordkeeping.  ¶ 102 (citing NEPC Report at 1).

Fourth, Defendants ask this Court to improperly isolate two paragraphs of the Complaint wherein Plaintiffs allege the Plan's participation in "unchecked" revenue sharing "saddled Plan participants with above-market recordkeeping fees."  ¶¶94-95.  Reading the Complaint as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible, leads to the conclusion that

Plaintiffs have pled a plausible claim of fiduciary breach.  *Sweda,* 923 F.3d at 331.

Further, relying on two out of circuit cases *Hecker* and *Salesforce.com,*[26] Defendants

justify the Plan's participation in revenue sharing.  Defs. Mem. at 31, fn 29.  The

fact that revenue sharing is not *per se* imprudent does not justify Defendants'

imprudence.  Fiduciaries should not "choose otherwise imprudent investments

specifically to take advantage of revenue sharing."  *Tibble*, 2017 WL 3523737, at

*11.

At the very least, Defendants' arguments raise an issue of fact that cannot be

resolved at the pleading stage.  *See Cassell*, 285 F.Supp.3d at 1064  ("[t]he question

whether it was imprudent to pay a particular amount of record-keeping fees generally

involves questions of fact that cannot be resolved on a motion to dismiss.").

### C. The Complaint States A Plausible Claim for Breach of the Duty of Loyalty

Defendants selected high-cost investments with revenue sharing in order to

use a portion of the fees to pay Principal its inflated fees.  These actions support a

strong inference Defendant's actions, were taken (1) to save itself costs at the

expense of Plan participants, and/or (2) to favor its recordkeepers over the Plan

participants.  Either reason is inconsistent with the duty of loyalty.  *See, e.g.*,

*Johnson*, 2018 WL 1427421, at * 9 ("While the complaint provides no direct

---

[26] *Davis v. Salesforce.com, Inc.*, 2020 WL 5893405 (N.D. Cal. Oct. 5, 2020); *See also supra* fn 20.

evidence of self-dealing or preferential treatment for Fidelity, the inclusion and retention of various Fidelity investment products is circumstantial evidence that Defendants did not act "with an eye single toward beneficiaries, interests.")  In any event, whereas here, Plaintiffs have pled a breach of the intertwined fiduciary duties of loyalty and prudence as a single count, courts often reject a motion to dismiss the loyalty claims independently.  *See, e.g.*, *Pinnell,* 2020 WL 1531870, at * 6.

## D. Cognizant and the Board Are Properly Alleged As Defendants

Defendants' arguments for dismissing Plaintiffs' monitoring claims against Cognizant and the Board are meritless. Defs. Mem. at 36-39.  As a threshold matter, it is inappropriate to determine fiduciary status at the pleading stage.  *Main*, 248 F. Supp. 3d at 795 ("Plaintiffs have alleged that these defendants were either named fiduciaries or had control over management of the Plan.  Accordingly, the Court finds that is [sic] dismissal is not appropriate at this stage."); *In re Schering-Plough Corp. ERISA Litig.*, No. 03-CV-1204, 2007 WL 2374989, at *7 (D.N.J. Aug. 15, 2007) ("Fiduciary status is a fact sensitive inquiry and courts generally do not dismiss claims at this early stage where the complaint sufficiently pleads defendants' ERISA fiduciary status.").

Plaintiffs allege the Board "appointed the Committee which is responsible 'for the investment Plan assets.'"  The fact that the Plan does not identify the Board as a fiduciary is inconsequential because "[u]nder ERISA, fiduciaries with the power to

appoint have the concomitant fiduciary duty to monitor and supervise their appointees." ¶ 31.[27] Courts have found time and again that inherent in the power to appoint a fiduciary is the fiduciary obligation to monitor the fiduciary. *See In re Schering-Plough ERISA Litig.*, 2010 WL 2667414, at *8 (D.N.J. June 29, 2010); *Graden v. Conexant Systems, Inc., et al.*, 574 F.Supp.2d 456, 466 (D.N.J. 2008) (same) (citation omitted). As a result of the overlapping, and interrelated relationship between Cognizant, the Board, and the Committee, the Complaint provides plausible allegations that Cognizant and the Board functioned as a fiduciary. *Pledger v. Reliance Trust Co.*, 240 F.Supp. 1314, 1325 (N.D. Ga. 2017). After all, if neither Cognizant nor the Board supervised the Committee, to whom was the Committee accountable?

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss in its entirety, or in the alternative, to grant Plaintiffs leave to amend given this is Plaintiffs' first complaint.

Dated:  March  18, 2021                         Respectfully submitted,

**CAPOZZI ADLER, P.C.**

---

[27] Plaintiffs' allegations here are thus distinguishable from the plaintiffs in *IJKG Opco LLC v. General Trading Co.* where the plaintiffs failed to allege "Cigna had any discretionary authority or control with respect to the management or disposition of the Plan's assets or in the administration of the Plan with respect to this claim." *IJKG Opco LLC v. General Trading Co.*, 2020 WL 1074905, *5 (D.N.J. March 6, 2020); *see* ¶¶ 31-33.

<u>/s/</u> Mark K. Gyandoh
Mark K. Gyandoh, Esquire
Attorney ID No. 88587
Gabrielle Kelerchian
Attorney ID No. 324248
312 Old Lancaster Road
Merion Station, PA 19066
Tel: (610) 890-0200
Fax (717) 233-4103
Email: markg@capozziadler.com
           gabriellek@capozziadler.com

**CAPOZZI ADLER, P.C.**
Donald R. Reavey, Esquire
Attorney ID No. 82498
2933 North Front Street
Harrisburg, PA 17110
(717) 233-4101
Fax (717) 233-4103
Email: donr@capozziadler.com

Counsel for Plaintiffs and
the Putative Class

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 18, 2021 a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By: <u>*/s/ Mark K. Gyandoh*</u>
Mark K. Gyandoh, Esq.