# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No. 8:20-cv-01529-JLS-JDE            Date: July 16, 2021
Title: In re: Prime Healthcare ERISA Litigation

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Melissa Kunig | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:    ATTORNEYS PRESENT FOR DEFENDANTS:

Not Present                                      Not Present

**PROCEEDINGS:**    **(IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS (Doc. 17)**

Before the Court is Defendants' Motion to Dismiss.[1] (Mot., Doc. 17.) Plaintiffs opposed, and Defendants replied. (Opp., Doc. 22; Reply, Doc. 31). For the following reasons, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion.

### I.    BACKGROUND

Plaintiffs are current and former participants in the Prime Healthcare Services, Inc. 401(k) Plan (the "Plan"), a tax-deferred, defined contribution retirement plan. They bring this action against Defendants Prime Healthcare Services, Inc. ("Prime Healthcare") and the Administrative Committee of the Prime Healthcare Services, Inc. 401(k) Plan ("Administrative Committee") for breach of their fiduciary duties under the Employee Retirement Income Security Act ("ERISA"). (Consolidated Amended Complaint ("CAC"), Doc. 16.)

The Plan is a defined contribution retirement plan provided by Prime Healthcare to its employees. (CAC ¶ 2.) Defined contribution plans are tax-deferred investment vehicles that "have become the primary form of retirement savings in the United States."

---

[1] The Court took this matter under submission. (Doc. 43.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-01529-JLS-JDE                                                          Date: July 16, 2021
Title:  In re: Prime Healthcare ERISA Litigation

(*Id.*)  Unlike traditional defined benefit retirement plans, such as a pension plan, in which the employer promises a calculable benefit to the employee and assumes the risk of underperformance of fund assets, participants in 401(k) plans pay the administration fees and bear the risk of investment underperformance.  (*Id.*)

As of December 31, 2019, the Plan had 44,421 participants with account balances and assets totaling approximately $1.1 billion, placing it in the top 0.1% of all 401(k) plans by plan size.  (*Id.* ¶ 4.)  Defendants maintain the Plan and are responsible for "selecting, monitoring, and retaining the service provider(s) that provide investment, recordkeeping, and other administrative services."  (*Id.* ¶ 5.)

Plaintiffs allege that Defendants breached their fiduciary duty to manage and monitor the Plan by (1) maintaining consistently underperforming investment options, (2) charging excessive recordkeeping costs, and (3) charging excessive management fees.  As relevant to this Order, the Court details the allegations regarding the allegedly underperforming investment options below.

### A. The Plan's Investment in Fidelity Freedom Funds

The Plan offers, among other investments, fourteen Target Date Funds ("TDFs").  A TDF is an investment vehicle that offers an "all-in-one retirement solution" through a portfolio of underlying funds that gradually shifts to become more conservative as the target retirement year approaches.  (CAC ¶ 26.)  All TDFs are inherently actively managed because managers make changes to the allocations of stocks, bonds, and cash over time.  (*Id.*)  These allocations are referred to as a fund's "glide path."  (*Id.*) The underlying funds that are included in a TDF can be actively or passively managed.  (*Id.*) Because most Plan participants are not sophisticated investors, many of them concentrate their retirement assets in TDFs.  (*Id.* ¶ 30.)

From at least December 31, 2011 through July 1, 2019, the Plan offered the Fidelity Freedom fund target date suite.  (*Id.* ¶ 27.)  Fidelity Management & Research Company ("Fidelity") is one of the largest target date fund providers by total assets.  (*Id.*)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-01529-JLS-JDE   Date: July 16, 2021
Title: In re: Prime Healthcare ERISA Litigation

Among its TDF offerings, Fidelity offers the riskier and more costly Freedom funds (the "Active suite") and the less costly and less risky Freedom Index funds (the "Index suite"). (*Id.*)  While the Active suite invests predominantly in actively-managed Fidelity mutual funds, the Index suite invests in Fidelity funds that passively track market indices. (*Id.* ¶ 28.)  In other words, while the Active and Index suites are both actively managed by virtue of being TDFs, the underlying assets in the Active suite consist mainly of actively-managed funds, while the underlying assets in the Index suite consist of passively-managed index funds.

Plaintiffs allege that Defendants' decision to include the Active suite instead of the Index suite in its Plan lineup "constitutes a glaring breach of their fiduciary duties." (*Id.* ¶ 28.)  The Active suite is allegedly riskier both in its underlying holdings and its asset allocation strategy and is also "dramatically more expensive" than the Index suite. (*Id.*) While the Index suite's expense ratio[2] is only 0.08%, the Active suite has expense ratios ranging from 0.47% to 0.75%. (*Id.* ¶ 38.)

Further, after the Active suite underwent a strategy overhaul in 2013 and 2014, "its managers have had the discretion to deviate from the glide path allocations by 10 percentage points in either direction," departing from "the accepted wisdom that target date funds should maintain pre-set allocations." (*Id.* ¶ 36.)  Plaintiffs allege that this changed investment strategy unnecessarily exposed the suite's assets to market fluctuations and volatility. (*Id.*)  In March 2018, a Reuters special report[3] stated that many investors lost confidence in the Active suite "because of their history of underperformance, frequent strategy changes and rising risk." (*Id.*)  Plaintiffs allege that this loss of investor confidence is further supported by the flow of funds to and from the

---

[2] The expense ratio is the fund's total annual cost to an investor, expressed as a percentage of assets.  (CAC ¶ 38.)

[3] Tim McLaughlin & Renee Dudley, *Special Report: Fidelity puts 6 million savers on risky path to retirement*, REUTERS (Mar. 5, 2018), *available at* https://www.reuters.com/article/us-funds-fidelity-retirement-special-rep/special-report-fidelity-puts-6-million-savers-on-risky-path-to-retirement-idUSKBN1GH1SI.  (CAC at 16 n.8.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-01529-JLS-JDE            Date: July 16, 2021
Title: In re: Prime Healthcare ERISA Litigation

target date suites; while the Index suite has seen significant inflows of investments—receiving an estimated $4.9 billion in new funds in 2018 alone—the Active suite has "deteriorated," experiencing an estimated $5.4 billion in net outflows in 2018. (*Id.* ¶ 41.) This movement out of the Active suite has been ongoing for years; nearly $16 billion has been withdrawn from the Active suite over the four years prior to 2018. (*Id.*) Plaintiffs further allege that, since its strategy overhaul, the Active suite has consistently underperformed the Index suite, and the majority of its underlying investments have failed to outperform their respective benchmarks over their respective lifetimes. (*Id.* 43–44.)

       Finally, Plaintiffs allege that Defendants' "imprudent choice" to retain the Active suite is exacerbated by the fact that the Active suite served as the Plan's Qualified Default Investment Alternative ("QDIA") for as long as it was an option in the Plan's investment menu. (*Id.* ¶ 29.) This means that if participants do not direct where their assets should be invested, all contributions are automatically invested in the QDIA. (*Id.*) Plaintiffs allege that the vast majority of plan participants are not sophisticated investors and therefore, by default, concentrate their retirement assets in target date funds, magnifying the impact of Defendants' "imprudent selection" of the Active suite. (*Id.* ¶ 30). By December 31, 2018, approximately 45% of the Plan's assets were invested in the Active suite.

       **B.**     **Other Contested Funds**

       Plaintiffs also allege that, in addition to the Active suite, Defendants breached their fiduciary duty to Plan participants based on four other allegedly underperforming funds. First, Plaintiffs allege that Defendants failed to replace the underachieving Invesco Real Estate Fund despite consistent underperformance on a rolling five- and ten-year annualized basis. (CAC ¶¶ 46–47.) Additionally, while Defendants replaced the Prudential Jenison Small Company Fund Class Z in 2019, Plaintiffs argue that it should have been eliminated much sooner, as it underperformed its benchmark each year from

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-01529-JLS-JDE                                      Date: July 16, 2021
Title:  In re: Prime Healthcare ERISA Litigation

2012 to 2018 on a rolling five-year annualized basis.  (*Id*. ¶¶ 48–49.)  Finally, Plaintiffs also allege that the T. Rowe Price Mid-Cap Value Fund and the Oakmark Equity and Income Fund are other examples of underperforming funds that should have been replaced due to underperformance. (*Id*. ¶¶ 50–52.)

      **C.**     **The Instant Action**

Plaintiffs' amended complaint alleges three claims under ERISA: (1) breach of fiduciary duty, (2) failure to monitor, and (3) knowing breach of trust.  Defendants move to dismiss the complaint in its entirety for failure to state a claim under Rule 12(b)(6).

**II.**    **LEGAL STANDARD**

"Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for 'failure to state a claim upon which relief can be granted.'  Dismissal of a complaint can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Alfred v. Walt Disney Co.*, 388 F. Supp. 3d 1174, 1180 (C.D. Cal. 2019) (citation omitted) (quoting Fed R. Civ. P. 12(b)(6)).  In deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all "well-pleaded factual allegations" in a complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Courts must also draw all reasonable inferences in the light most favorable to the non-moving party.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  Yet, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.  8:20-cv-01529-JLS-JDE | Date: July 16, 2021 |
| Title:  In re: Prime Healthcare ERISA Litigation | |

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  A plaintiff must not merely allege conduct that is conceivable.  When "a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

### III.  REQUEST FOR JUDICIAL NOTICE

Defendants request that the Court take judicial notice of thirteen exhibits consisting of the Plan's Annual Fee Disclosure Forms and the publicly-available Form 5500s spanning the Class Period.  (Request for Judicial Notice ("RJN"), Doc. 17-1.)

"Generally, a court may not consider material beyond the complaint in ruling on a [Rule 12] motion." *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).  However, courts may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Under the "incorporation by reference" doctrine, courts may take judicial notice of a document where "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998)). Under Federal Rule of Evidence 201, a fact is appropriate for judicial notice if it is not subject to reasonable dispute in that it is (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-01529-JLS-JDE                      Date: July 16, 2021
Title: In re: Prime Healthcare ERISA Litigation

Plaintiffs do not oppose the request, and the Court finds these materials to be proper subjects of judicial notice. Defendants' request is therefore GRANTED. *See Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. SACV 15-1614-JLS-JCGx, 2016 WL 4507117, at *3 (C.D. Cal. Aug. 5, 2016) (taking judicial notice of Form 5500s and other plan documents).

## IV. DISCUSSION

Defendants argue that Plaintiffs have failed to adequately plead their claims for (1) breach of fiduciary duties, (2) failure to monitor, and (3) knowing breach of trust.[4] The Court addresses each claim in turn.

### A. Breach of Fiduciary Duty

ERISA requires plan fiduciaries to act "solely in the interest of [plan] participants . . . for the exclusive purpose of (i) providing benefits to participants . . . and (ii) defraying reasonable expenses of administering the plan[.]" 29 U.S.C. § 1104(a)(1). ERISA also requires plan fiduciaries to discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like

---

[4] Defendants also argue, in a footnote, that "while Plaintiffs define the 'Class Period' as August 18, 2014, through the present, none of the Plaintiffs were invested in the Plan until the end of 2015. Plaintiffs' claims should be limited to the time they were invested in the Plan, as they lack standing to challenge the Plan's fiduciary management for time periods where they could not have suffered any harm." (Mot. at 1 n.1.) Defendants, however, do not point the Court to any allegation in the CAC supporting its contention that "none of the Plaintiffs were invested in the Plan until the end of 2015"; the allegations concerning the named Plaintiffs merely state that they were "former employee[s]" and current or former participants in the Plan, without providing time periods of employment or Plan participation (CAC ¶¶ 9–13). Because Defendants have not pointed the Court to any basis in the pleadings to limit the start of the Class Period to 2015, it declines to do so at this stage in the litigation.

**CIVIL MINUTES – GENERAL**                                7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-01529-JLS-JDE                                   Date: July 16, 2021
Title: In re: Prime Healthcare ERISA Litigation

capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Plaintiffs allege that Defendants breached their fiduciary duty of prudence under ERISA in three ways: (1) maintaining consistently underperforming investment options; (2) causing the Plan to pay excessive recordkeeping fees; and (3) causing the Plan to pay excessive investment management fees. (Opp. at 12–23.) Because the Court concludes that Plaintiffs have plausibly alleged a breach of fiduciary duty claim under ERISA based on the Active suite allegations, the Court declines to address whether the remaining allegations would independently support a breach.

      Plaintiffs contend that Defendants breached their fiduciary duty of prudence by offering Fidelity's Active suite in the Plan's investment lineup instead of the Index suite. As described above, the Active suite is a TDF consisting primarily of actively-managed mutual funds, while the Index suite consists of passively-managed funds that merely track market indices. Of the 29 Fidelity Series Funds in the Active suite portfolio, 17 of them trailed their respective benchmarks over their respective lifetimes as of September 2020. (CAC ¶ 34.) The Active suite also had a significantly higher expense ratio than the Index suite, despite consistently underperforming the Index suite based on three-and five-year annualized returns. (CAC ¶¶ 38, 43.) The Active suite further underwent a "strategy overhaul" in 2013 and 2014 that gave its managers discretion to deviate from glide path allocations (a key feature of TDFs) in order to time market shifts to locate underpriced securities. (*Id.* ¶ 36.) As a result of this "history of underperformance, frequent strategy changes and rising risk," investors began to lose confidence in the Active suite, as indicated by significant capital outflow; in 2018, the series experienced approximately $5.4 billion in net outflows, and Plaintiffs allege that nearly $16 billion has been withdrawn from the fund family over four years prior to 2018. (*Id.* ¶¶ 36, 41.) Defendants nonetheless maintained the Active suite as its default investment option (QDIA) for as long as it was an option in the Plan's investment menu. (*Id.* ¶ 29.)

      Reading the allegations in the light most favorable to Plaintiffs, the above allegations are sufficient to plausibly allege that Defendants failed to act "'with the care,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-01529-JLS-JDE    Date: July 16, 2021
Title: In re: Prime Healthcare ERISA Litigation

skill, prudence and diligence' that a prudent person 'acting in a like capacity and familiar with such matters' would use." *Tibble v. Edison Int'l*, 575 U.S. 523, 528 (2015) (quoting 29 U.S.C. § 1104(a)(1)). The Court addresses below each of Defendant's arguments to the contrary.

First, Defendants argue that "Plaintiffs' Complaint does not include any allegations about the *process* used by Plan fiduciaries to select the Freedom TDFs as opposed to the Index TDFs or other types of investments." (Mot. at 8, emphasis added.) As Plaintiffs point out, however, "[t]o state a claim for breach of fiduciary duty [under ERISA], a complaint does not need to contain factual allegations that refer directly to the fiduciary's knowledge, methods, or investigations at the relevant times." *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1070 (N.D. Cal. 2017) (citing *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013)). Because "'[t]hese facts will frequently be in the exclusive possession of the breaching fiduciary,'" *Bouvy v. Analog Devices, Inc.*, 2020 WL 3448385, at *3 (S.D. Cal. June 24, 2020), "the court may be able to reasonably infer from the circumstantial factual allegations that the fiduciary's decision-making process was flawed." *Terraza*, 241 F. Supp. 3d at 1070. The Court finds the allegations recited above sufficient to allow a reasonable inference of a flawed process.

Second, Defendants argue that the Plan fiduciaries removed the Active suite from the Plan in 2019, and Plaintiffs do not allege any facts showing that Defendants acted imprudently with regard to the Active suite during the period the Plan actually held those funds. (Mot. at 10, emphasis in original.) For example, Defendants point out that the three- and five-year performance analysis in the complaint is based on data as of September 20, 2020, which would include a period of time during which the Plan did not offer the Active suite. (*Id.*; CAC ¶ 34.) At the pleading stage, however, this data is sufficient to support an inference that the Active suite was consistently underperforming the Index suite during the relevant time period. (*See* Opp. at 14.) Plaintiffs explain that, in reviewing the Plan, counsel did not have access to Fidelity's historical data, and could

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. 8:20-cv-01529-JLS-JDE | Date: July 16, 2021 |
| Title: In re: Prime Healthcare ERISA Litigation | |

access only the information available through Fidelity's website, which "provides the most recent performance data." (*Id.* at 14 n.11.)

Moreover, Plaintiffs allege additional facts supporting an inference of imprudence preceding the Plan's removal of the Active suite. Plaintiffs allege a strategy overhaul in 2013 and 2014 in which Fidelity gave managers discretion to deviate from glide path allocations by 10 percentage points in either direction and "encouraged its portfolio managers to attempt to time market shifts in order to locate underpriced securities," creating unnecessary risk for investors and deviating from "the accepted wisdom that target date funds should maintain pre-set allocations." (CAC ¶ 36.) Plaintiffs also allege that investors have been losing confidence in the Active suite for years, as indicated by an estimated $5.4 billion in capital outflows in 2018 and approximately $16 billion over the prior four years. (*Id.* ¶ 41.) These allegations are bolstered by media reports detailing investors' declining confidence in the Active suite, such as the 2018 Reuters special report discussing the Active suite's "history of underperformance, frequent strategy changes and rising risk."[5] (*Id.* ¶ 36.) The fact that Defendants removed the Active suite in 2019 is therefore insufficient to defeat Plaintiffs' claim for breach of fiduciary duty, as

---

[5] Defendants contest Plaintiffs' characterization of investors' waning confidence in the Active suite, arguing in their Reply that the Court should take judicial notice of what these market sources "*actually* say," which Defendants assert "conclusively establish the Freedom TDFs were widely accepted by other fiduciaries." (Reply at 6.) Specifically, Defendants argue that the sources show that the "capital flight" from the Active suite was not as substantial as Plaintiffs suggest, given the total size of the Freedom TDFs, and that the Freedom TDFs were the second most used target-date fund in the entire industry. (*Id.* at 7.) Defendants do not dispute that the sources say what Plaintiffs allege they say—rather that, when read in context, one could draw a different conclusion from the sources. This attempt to inject issues of fact into their motion, however, is inappropriate at the pleadings stage. The Court therefore declines to consider the additional materials attached to the Reply brief in order to resolve the question of whether investors *actually* lost confidence in the Active suite; it is enough that Plaintiffs' allegations concerning these market sources plausibly support a breach.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-01529-JLS-JDE                                       Date: July 16, 2021
Title:  In re: Prime Healthcare ERISA Litigation

Plaintiffs have plausibly alleged that Defendants acted imprudently by including the Active suite (as the Plan's default investment option, no less) prior to that date.[6]

Third, Defendants argue that "courts routinely reject attempts to create an inference of an imprudent process through comparisons of the performance and fees of *actively* managed funds to those of *passively* managed funds." (Mot. at 8, citing *Davis v. Salesforce.com, Inc.*, No. 20-CV-01753-MMC, 2020 WL 5893405, at *3 (N.D. Cal. Oct. 5, 2020.)  Defendants are correct that, where Plaintiffs allege "'a prudent fiduciary in like circumstances would have selected a different fund based on the cost or performance of the selected fund, [Plaintiffs] must provide a sound basis for comparison—a meaningful benchmark.'" *Salesforce*, 2020 WL 5893405, at *3 (quoting *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018)).  "Passively managed funds, however, ordinarily cannot serve as meaningful benchmarks for actively managed funds, because the two types of funds 'have different aims, different risks, and different potential rewards that cater to different investors.'" *Id.* (quoting *Davis v. Wash. Univ.*, 960 F.3d 478, 485 (8th Cir. 2020)).  Defendants therefore argue that Plaintiffs cannot create an inference of imprudence by comparing the Active suite's performance and cost with that of the Index suite. (Mot. at 8–7.)

Although passively-managed funds are generally considered inappropriate comparators for actively-managed funds, "[c]ourts have specifically held that the determination of the appropriate benchmark for a fund is not a question properly resolved at the motion to dismiss stage." *In re MedStar ERISA Litig.*, No. CV RDB-20-1984, 2021 WL 391701, at *6 (D. Md. Feb. 4, 2021) (collecting cases).  Defendants' argument that the Index suite is an inappropriate benchmark to assess the Active suite's

---

[6] For similar reasons, the Court rejects Defendants' argument that three- or five-year performance histories cannot create an inference of imprudence. (*See* Opp. at 10–11.)  Although courts have held that "allegations based on five-year returns are not sufficiently long-term to state a plausible claim of imprudence," *Salesforce.com*, 2020 WL 5893405, at *4, as detailed in this Section, Plaintiffs allege more than mere underperformance to support their claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-01529-JLS-JDE                              Date: July 16, 2021
Title: In re: Prime Healthcare ERISA Litigation

performance raises "'factual questions . . . not properly addressed on a motion to dismiss.'" *Id.* (quoting *Cunningham v. Cornell Univ.*, No. 16-CV-6525 (PKC), 2017 WL 4358769, at *7 (S.D.N.Y. Sept. 29, 2017)). For example, Plaintiffs allege that both the Index suite and the Active suite are inherently actively managed, by virtue of being TDFs; managers make changes to the allocations of stocks, bonds and cash over time. (CAC ¶ 26.) The Index suite also shares the same management firm and a nearly identical glide path as the Active suite. (*Id.* ¶¶ 28, 35.) Although the underlying assets in the Active suite are comprised predominantly of actively-managed mutual funds, while the Index suite contains only passively-managed funds, the Court is unconvinced that it is appropriate to decide, at the pleadings stage, whether the Index suite is a meaningful benchmark. *See, e.g.*, *Blackmon v. Zachary Holdings, Inc.*, No. 5:20-CV-988-DAE (W.D. Tex. Apr. 22, 2021) (Ex. A to Notice of Supp. Authority, Doc. 34-1) (declining to dismiss breach of fiduciary duty claim based on similar allegations concerning Fidelity's Active suite, concluding that the inquiry involved issues of fact "better suited for summary judgment, when discovery is complete and the record is more developed").[7]

---

[7] Defendants' reliance on *Wehner v. Genentech, Inc.* is misplaced. (*See* Reply at 3, citing No. 20-CV-06894-WHO, 2021 WL 507599, at *8 (N.D. Cal. Feb. 9, 2021)). In *Wehner*, the court dismissed a plaintiff's claim of imprudence based on the selection of more expensive and poorer performing Roche TDFs, concluding that the chosen comparators, Vanguard TDFs and Fidelity TDFs, were improper "apples-to-oranges" comparisons. *Wehner*, 2021 WL 507599, at *8. Specifically, the Roche TDFs were custom funds designed specifically for the plan, while the Vanguard and Fidelity TDFs were retail funds available to the public. *Id.* The plaintiff responded to this distinction by simply arguing "all three products (Roche TDFs and the Vanguard and Fidelity TDFs) are TDFs, so they must be comparable"—an argument the court found "insufficient to make this an 'apples-to-apples' comparison." *Id.* Here, in contrast, the Court concludes that whether the Index suite is an appropriate comparator is a question better resolved at summary judgment, particularly in light of the additional allegations of imprudence that go beyond the mere underperformance of the Active suite in comparison to the Index suite.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-01529-JLS-JDE                      Date: July 16, 2021
Title: In re: Prime Healthcare ERISA Litigation

Additionally, as the court in *In re MedStar* observed when denying a motion to dismiss similar allegations, Plaintiffs' claim for breach of fiduciary duty is not based merely on the allegation that the Active suite is simply more expensive, more risky, or poorer performing than the Index suite. As detailed above, Plaintiffs also allege that the Active suite saw a substantial outflow of investment capital in the years leading up to its removal from the Plan (CAC ¶¶ 36, 41) and received media scrutiny of its frequent strategy shifts, poor performance, and risk (CAC ¶ 36). *See In re MedStar*, 2021 WL 391701, at *6 ("[E]ven if this were the proper stage to consider the use of the Index suite as a benchmark, this case is distinguishable from [*Salesforce*] as the Plaintiffs[] have based their claim for imprudence on numerous other grounds. With respect to the Active suite, the Plaintiffs have not only alleged that the Active suite underperformed in comparison to the Index suite, but also that the Active suite saw an outflow of investment as well as received criticism from different financial news and reporting services.")

Accordingly, the Court DENIES Defendants' motion as to the first claim.

### B. Failure to Monitor

Plaintiffs' second claim alleges that Defendants also breached their fiduciary duties under ERISA by failing to monitor the performance and processes of their co-fiduciaries. (CAC ¶¶ 84–92.) Defendants argue that this claim fails because (1) it is derivative of their first claim for breach of fiduciary duty, which Plaintiffs have failed to adequately plead, and (2) "the Complaint alleges no facts regarding how Prime monitored the Plan fiduciaries, including how Prime's monitoring process was allegedly deficient." (Mot. at 16–17.)

"A fiduciary 'has a continuing duty to monitor trust investments and remove imprudent ones. This continuing duty exists separate and apart from the [fiduciary's] duty to exercise prudence in selecting investments at the outset.'" *White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2016 WL 4502808, at *18 (N.D. Cal. Aug. 29, 2016) (quoting

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-01529-JLS-JDE                         Date: July 16, 2021
Title: In re: Prime Healthcare ERISA Litigation

*Tibble v. Edison Int'l*, 575 U.S. 523, 528 (2015)). "'A plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones.'" *Id.*

      Defendants argue that this claim is derivative of Plaintiffs' first claim and must be dismissed if Plaintiffs cannot adequately plead an underlying breach of fiduciary duty. (Mot. at 17.) Because Plaintiffs have adequately pleaded their first claim, the Court declines to dismiss the second claim on this basis.

      Defendants also argue that Plaintiffs fail to allege facts "regarding how Prime monitored the Plan fiduciaries, including how Prime's monitoring process was allegedly deficient." (*Id.*) Plaintiffs, however, allege that Prime Healthcare is responsible for "appointing, overseeing, and removing members of the Administrative Committee, who, in turn, are responsible for appointing, overseeing, and removing members of the Committee." (CAC ¶ 85.) Plaintiffs further allege that Defendants "[f]ail[ed] to monitor and evaluate the performance of their appointees or have a system in place for doing so," "[f]ail[ed] to monitor their appointees' fiduciary processes, which would have alerted a prudent fiduciary to the breaches of fiduciary duties described herein," and "[f]ail[ed] to remove appointees whose performances were inadequate in that they continued to maintain imprudent, excessively costly, and poorly performing investments within the Plan, all to the detriment of the Plan and its participants' retirement savings." (CAC ¶ 89.)

      Defendants argue that the district court in *White* dismissed similar allegations. (Opp. at 17, citing *White*, 2016 WL 4502808, at *18). In *White*, however, the court noted that "the claim as pled is wholly dependent on the breaches of duty alleged in the first through fourth causes of action," and the plaintiffs had failed to adequately allege those underlying claims. *White*, 2016 WL 4502808, at *18. As above, Plaintiffs have adequately pleaded a breach of fiduciary duty, and the Court concludes that the allegations described above are sufficient to plausibly allege a claim for failure to monitor. *See Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. SACV 15-1614-JLS-

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-01529-JLS-JDE            Date: July 16, 2021
Title: In re: Prime Healthcare ERISA Litigation

JCGx, 2016 WL 4507117, at *7 (C.D. Cal. Aug. 5, 2016) (denying motion to dismiss claim for failure to monitor where the plaintiffs alleged that the defendants breached by failing to "(a) monitor and evaluate the performance of their appointees, or *failing to have a system in place for doing so*, and (b) failing to remove appointees who maintained imprudent, excessively costly, and poorly performing investments within the Plan, all to the detriment of the Plan and its participants").

The Court therefore DENIES the motion as to Plaintiffs' second claim.

### C.    Knowing Breach of Trust

Finally, Plaintiffs' third claim alleges that, "[i]n the alternative, to the extent that any of the Defendants are not deemed a fiduciary or co-fiduciary under ERISA," Defendants are liable for participating "in a knowing breach of trust."[8] (CAC ¶¶ 93–95.)

In their opposition, Plaintiffs clarify that this claim is brought under ERISA Section 502(a)(3), which states that "[a] civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of [ERISA Title I] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]" 29 U.S.C. § 1132(a)(3); (Opp. at 25).[9]

Defendants argue that this claim fails because Section 502(a)(3) authorizes only injunctive or "other appropriate equitable relief" against non-fiduciaries; legal damages are unavailable under the statute. (Mot. at 19, citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002)). Defendants further argue that Plaintiffs do not plead facts showing "they are entitled to specifically identifiable monies that can be traced to accounts held by Prime." (Mot. at 19.) Plaintiffs do not dispute that they

---

[8] In their Motion, Defendants do not argue that they are not fiduciaries under ERISA.
[9] Defendants' argument in its opening brief regarding preemption is therefore moot. (Mot. at 18.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-01529-JLS-JDE                                              Date: July 16, 2021
Title:  In re: Prime Healthcare ERISA Litigation

cannot seek legal damages under the statute, but instead argue that *Great-West*—which involved a petitioner seeking to recover from the plan beneficiary proceeds obtained from a third party in a tort suit—is distinguishable from this case.  (Opp. at 25.)

As explained by the Supreme Court, the term "'equitable relief' must mean *something* less than *all* relief." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (quoting *Merens v. Hewitt Assocs.*, 508 U.S. 248, 258 n.8 (1993)).  "[T]he term 'equitable relief' in § 502(a)(3) must refer to 'those categories of relief that were *typically* available in equity[.]"  *Great-West*, 534 U.S. at 210 (quoting *Merens*, 508 U.S. at 256).  However, "not all relief falling under the rubric of restitution is available in equity." *Id.* at 212. Whether restitution is a legal or equitable remedy "depends on 'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought."  *Id.* at 213 (alteration in original) (quoting *Reich v. Continental Casualty Co.*, 33 F.3d 754, 756 (7th Cir. 1994)).  "In cases in which the plaintiff 'could *not* assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him,' the plaintiff had a right to restitution *at law*[.]" *Id.* (quoting 1 Dobbs § 4.2(1), at 571).  "In contrast, a plaintiff could seek restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* (citations omitted).  "Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214.

Here, Plaintiffs fail to allege that the damages sought can be traced to "particular funds or property in the defendant's possession."  Plaintiffs merely argue that "[t]he losses caused to the Plan here by Defendants are entirely different than the damages sought in *Great-West* and are unquestionably specifically identifiable."  (Opp. at 25.)  The Court disagrees that the damages sought here are "unquestionably specifically

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. 8:20-cv-01529-JLS-JDE | Date: July 16, 2021 |
| Title: In re: Prime Healthcare ERISA Litigation | |

identifiable," and Plaintiffs neither elaborate on this argument nor point the Court to any factual allegations in the CAC supporting this contention.

Accordingly, the Court GRANTS the motion as to Plaintiffs' third claim, which is DISMISSED WITHOUT PREJUDICE.

## V. CONCLUSION

For the above reasons, Defendants' Motion is GRANTED IN PART AND DENIED IN PART. Plaintiffs are GRANTED LEAVE TO AMEND the pleading, correcting the deficiencies identified herein in a manner consistent with all Rule 11 obligations. Any amended complaint shall be filed within **twenty-one (21) days** of the date of this Order. Any claim not included in a timely-filed amended complaint will be deemed dismissed with prejudice.

Initials of Deputy Clerk: mku