**MAYER BROWN LLP**

Bryan Nese
  *bnese@mayerbrown.com*
Alex Lakatos
  *alakatos@mayerbrown.com*
1999 K Street NW
Washington, DC 20006
Telephone: (202) 263-3000

Nancy Ross
  *nross@mayerbrown.com*
71 South Wacker Drive
Chicago, IL 60606-4637
Telephone: (312) 782-0600

*Counsel for Defendants.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARK MILANO, *et al.*,<br><br>　　*Plaintiffs*,<br><br>　　v.<br><br>COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION, *et al.*,<br><br>　　*Defendants*. | Civil Action No. 2:20-cv-17793-MEF-SDA<br><br>ORAL ARGUMENT REQUESTED |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

INTRODUCTION ...........................................................................................................1

ARGUMENT .................................................................................................................2

    I.     Plaintiffs' opposition confirms that they fail to state a claim for "underperformance" of the TDFs.........................................................2

    II.    Plaintiffs' opposition confirms that they have failed to state a claim for recordkeeping fees. ..............................................................7

    III.   Plaintiffs' opposition confirms that the remaining claims also fail to state a claim....................................................................................11

          A.    Plaintiffs fail to state a claim based on Cognizant's use of the mutual fund version of the American Century TDFs. ........11

          B.    Plaintiffs' share class claims should be dismissed. .................13

          C.    Plaintiffs fail to state a claim for breach of the duty to monitor. ..............................................................................15

CONCLUSION ............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Antoine v. Marsh & McLennan Cos., Inc.*,
  2023 WL 6386005 (S.D.N.Y. Sept. 30, 2023) ....................................................... 3

*Berkelhammer v. Automatic Data Processing, Inc.*,
  2022 WL 3593975 (D.N.J. Aug. 23, 2022) .................................................. 3, 4, 5

*Binder v. PPL Corp.*,
  2024 WL 1096819 (E.D. Pa. Mar. 12, 2024) ................................................. 4, 15

*Boley v. Universal Health Servs.*,
  36 F.4th 124 (3d Cir. 2022) ................................................................................ 14

*Cho v. Prudential Ins. Co. of Am.*,
  2021 WL 4438186 (D.N.J. Sept. 27, 2021) ....................................................... 3, 4

*Davis v. Salesforce.com, Inc.*,
  2020 WL 5893405 (N.D. Cal. Oct. 5, 2020) ................................................ 12, 13

*Davis v. Salesforce*,
  2022 WL 1055557 (9th Cir. Apr. 8, 2022) ......................................................... 13

*Genesis Bio-Pharmaceuticals, Inc. v. Chiron Corp.*,
  27 F. App'x. 94 (3d Cir. 2002) ............................................................................ 8

*Hughes v. Nw. Univ.*,
  595 U.S. 170 (2022) ................................................................................ 1, 12, 13

*Kruchten v. Ricoh USA, Inc*,
  2024 WL 3518308 (3d Cir. July 24, 2024) .......................................................... 6

*Luense v. Konica Minolta Bus. Sols. U.S.A., Inc.*,
  541 F. Supp. 3d 496 (D.N.J. 2021) ................................................................ 6, 12

*Matney v. Barrick Gold of N. Am., Inc.*,
  2022 WL 1186532 (D. Utah Apr. 21, 2022) ................................................ 13, 15

*Matney v. Barrick Gold of North America, Inc.*,
  80 F.4th 1136 (10th Cir. 2023) .......................................................................... 15

*Mator v. Wesco Distribution, Inc.*,
    102 F.4th 172 (3d Cir. 2024) .............................................. 1, 7, 9, 10, 11, 14, 15

*Miller v. Astellas US LLC*,
    2021 WL 1387948 (N.D. Ill. Apr. 13, 2021)......................................................3

*Nunez v. B. Braun Med., Inc.*,
    No. 20-cv-04195, slip op. (E.D. Pa. June 4, 2021)...........................................13

*Patterson v. Morgan Stanley*,
    2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019).......................................................3

*Perkins v. United Surgical Partners*,
    No. 23-cv-10375, 2024 WL 1574342 (5th Cir. Apr. 11, 2024) ........................14

*Peterson v. Insurance Offices, Inc.*,
    2021 WL 1382168 (D.N.J. Apr. 13, 2021).......................................................13

*Pinnell v. Teva Pharms. USA, Inc.*,
    2020 WL 1531870 (E.D. Pa. Mar. 31, 2020) .....................................................6

*Pizarro v. Home Depot, Inc.*,
    111 F.4th 1165 (11th Cir. 2024) ........................................................................4

*Silva v. Evonik Corp.*,
    2020 WL 12574912 (D.N.J. Dec. 30, 2020)..................................................6, 12

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs.*
    *Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013) .............................................................................12

*Sweda v. Univ. Pa.*,
    923 F.3d 320 (3d Cir. 2019) ..........................................................................4, 5

*Trauernicht v. Genworth Fin. Inc.*,
    2023 WL 5961651 (E.D. Va. Sept. 13, 2023) ....................................................3

*White v. Chevron Corp.*,
    2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ............................................12, 13

# INTRODUCTION

Plaintiffs' Opposition confirms that dismissal is warranted.

*First*, as to Plaintiffs' claim that Cognizant was imprudent in selecting the American Century Target Date Funds ("TDFs") for the Plan, Plaintiffs have no response to the fact that their own performance charts show that those TDFs routinely outperformed their benchmark and competitors. Instead, Plaintiffs resort to misreading their own charts and misstating the law, arguing they need not establish a "meaningful benchmark," while citing binding precedent holding they must.

*Second*, Plaintiffs' claim that Cognizant was imprudent in controlling the Plan's recordkeeping fees flouts *Mator v. Wesco Distribution, Inc.*, 102 F.4th 172 (3d Cir. 2024), which instructs that if a comparator plan paid indirect fees, and plaintiffs fail to account for those fees, such comparators should be disregarded—yet Plaintiffs make exactly that mistake on four of their five comparators. *Mator* instructs courts to use common sense to assess comparators, but Plaintiffs offer a fifth comparator without accounting for fees paid to one of its two recordkeepers. Plaintiffs thus have no valid comparators, versus fourteen in *Mator*.

*Third*, Plaintiffs miss the mark when they say they can state a claim merely by alleging that a CIT was less expensive than a mutual fund. Their position contravenes *Hughes v. Northwestern University*, 595 U.S. 170, 177 (2022), under

which courts should not impose inflexible rules, but rather afford "due regard" for "range of reasonable judgments a fiduciary may make."

*Fourth*, Plaintiffs fail to rehabilitate their claims that Cognizant was required to choose a different share class of several MassMutual funds to nix the revenue sharing that helped pay for the Plan's recordkeeping costs. Plaintiffs ignore their own allegations showing that the chosen share classes were a windfall to the Plan, and Plaintiffs cite inapposite cases in which revenue sharing made no sense because recordkeeping fees were bloated, something Plaintiffs fail to establish here.

*Finally*, Plaintiffs concede that their monitoring claims are derivative and cannot survive once their underlying claims are dismissed. Nor do Plaintiffs justify their failure to allege the elements of their monitoring claim, which they must satisfy regardless of whether their underlying claims survive.

## ARGUMENT

**I. PLAINTIFFS' OPPOSITION CONFIRMS THAT THEY FAIL TO STATE A CLAIM FOR "UNDERPERFORMANCE" OF THE TDFS.**

The FAC contains no allegations concerning Cognizant's process for selecting and retaining the American Century TDFs (FAC ¶¶ 80-85), nor does Plaintiffs' Opposition identify any such allegations (Opp. 44-45). Thus, Plaintiffs are relying strictly on their performance-related charts to support an inference of imprudence—but as Cognizant demonstrated, those charts show that the American Century TDFs routinely *outperformed* the Morningstar benchmark, or beat Plaintiffs' cherry-

2

picked comparator funds, or both.  ECF No. 81 (American Century TDFs outperformed in 2014, 2015, 2018, 2020, and 2022).

Plaintiffs make no attempt to distinguish *Patterson v. Morgan Stanley*, 2019 WL 4934834, at *11 (S.D.N.Y. Oct. 7, 2019), which held that a single year of outperformance precluded plaintiffs from stating a claim, or *Cho v. Prudential Insurance Company of America*, 2021 WL 4438186, at *9 (D.N.J. Sept. 27, 2021), which similarly held outperforming the benchmark "on several occasions" warranted dismissal.  As for *Antoine v. Marsh & McLennan Cos., Inc.*, 2023 WL 6386005, at *10 (S.D.N.Y. Sept. 30, 2023), which held that a lack of "consistent" underperformance undercut plaintiffs' claim, the Opposition says *Antoine* involved "an upswing in rankings" ". . . in 2021 and 2022," without explaining why the American Century TDFs' upswings in 2014, 2015, 2018, 2020, and 2022 should not also result in dismissal.

Plaintiffs' cases say nothing about *over*performance, and moreover, identify *lengthy* periods of significant underperformance not present here: *Berkelhammer v. Automatic Data Processing, Inc.*, for example, involved shortfalls over five-year and 10-year periods, 2022 WL 3593975, at *7 (D.N.J. Aug. 23, 2022); *Trauernicht v. Genworth Financial Inc.*, 2023 WL 5961651, at *1 (E.D. Va. Sept. 13, 2023) involved "at least three and a half years' worth of concerning and severely disappointing datapoints"; and *Miller v. Astellas US LLC*, 2021 WL 1387948, at *6

3

(N.D. Ill. Apr. 13, 2021), featured funds that "underperformed their benchmarks for two or three years prior to their selection in 2016." Opp. 38-39. Here, Plaintiffs rely largely on one-year dips, which is not enough, especially given the American Century TDF's pattern of rebounding. "[S]elling a fund too soon because of disappointing short-term losses is one of the surest ways to frustrate the long-term growth of a retirement plan." *Pizarro v. Home Depot, Inc.*, 111 F.4th 1165, 1180 (11th Cir. 2024); *see also Cho,* 2021 WL 4438186, at *9.

Cognizant demonstrated that even in the years where the Plaintiffs' comparators may have been ahead of the American Century TDFs, Plaintiffs fail to allege a meaningful gap. *See*, *e.g.*, ECF No. 73-4 (American Century TDFs within plus/minus three percent of competitors). Plaintiffs' cases confirm that courts require far more significant underperformance to infer imprudence. For example, Plaintiffs rely on *Binder v. PPL Corp.*, 2024 WL 1096819, at *3 (E.D. Pa. Mar. 12, 2024), where the complaint alleged three full years of underperformance of "*between 4% and 17%.*" *Id.* at *3. Plaintiffs' Opposition conspicuously fails to argue that their charts show anything approaching that magnitude. Rather, Plaintiffs suggest *any* analysis of the size of the performance differential should await discovery, citing *Binder*. Opp. 36. But *Binder* was resolved at the motion to dismiss stage without mentioning awaiting discovery, thus undermining Plaintiffs' position. And Plaintiffs' citation to *Berkelhammer*, 2022 WL 3593975, at *7, represents an

4

outlier that misreads *Sweda*. Opp. 35. *Sweda* held that the defendant could not provide competing facts at the motion to dismiss stage, not (as *Berkelhammer* would have it) that Plaintiffs' own factual allegations ought not be tested. *Sweda v. Univ. Pa.*, 923 F.3d 320, 333 (3d Cir. 2019) ("we are not permitted to accept Penn's account of the facts").

To save their claim, Plaintiffs employ two misguided gambits. Neither works.

***First***, Plaintiffs misread their own charts. Specifically, Plaintiffs urge the Court to believe that the American Century TDFs performed poorly versus other TDFs in 2022, when Plaintiffs' chart shows the opposite. Opp. 47. Lest there be any doubt, below is a representative segment from Plaintiffs' 2022 chart (ECF No. 73-9), with the American Century TDFs shown in black, the Morningstar benchmark in green, and Plaintiffs' other comparator TDFs in the remaining colors.



As the chart shows, all of the funds yielded negative returns in 2022, with those lines stretching furthest toward the left (toward negative 20%) the worst, or most negative. Thus, the black line (American Century TDFs) fared better than the benchmark and

5

most of Plaintiffs' carefully curated comparator funds, which took greater losses.

Plaintiffs engage in similar sleight of hand in 2015, glossing over the American Century TDFs beating the Morningstar benchmark. ECF No. 73-2. Plaintiffs tout Morningstar as "the most accepted source of investment data," (Opp. 16), so funds, like the American Century, that beat the Morningstar index can hardly support an inference of imprudence. Cognizant also demonstrated that choosing a fund that outperforms in down markets (a more conservative, retirement-centric philosophy) is a choice courts respect. ECF No. 81, at 23. Plaintiffs' *only* response—that the American Century TDFs did not perform well in the down markets of 2015 and 2022—is demonstrably false.

***Second***, Plaintiffs say they need not compare the American Century TDFs against a "meaningful benchmark" (Opp. 27), but cite myriad cases holding otherwise. Plaintiffs lead with *Kruchten v. Ricoh USA, Inc*, but the court rested its conclusion on whether Plaintiffs "established a meaningful benchmark to allege plausibly that Plan fees were excessive." 2024 WL 3518308, at *3 (3d Cir. July 24, 2024). And the Opposition cites *Luense v. Konica Minolta Business Solutions U.S.A., Inc.*, 541 F. Supp. 3d 496, 507 (D.N.J. 2021); *Silva v. Evonik Corp.*, 2020 WL 12574912, at *7 (D.N.J. Dec. 30, 2020) and *Pinnell v. Teva Pharmaceuticals USA, Inc.*, 2020 WL 1531870, at *4 (E.D. Pa. Mar. 31, 2020), *all* of which held Plaintiffs who rely on "circumstantial evidence . . . 'must provide a sound basis for

6

comparison – a meaningful benchmark – to show a prudent fiduciary in like circumstances would have selected a different fund.'" Plaintiffs cite *Binder*, but that case is alone in its view that *Sweda* does not require "meaningful benchmarks," which defies *Sweda*'s reliance on "appropriate benchmarks." 2024 WL 1096818, at *3 (quoting *Sweda*).

## II. PLAINTIFFS' OPPOSITION CONFIRMS THAT THEY HAVE FAILED TO STATE A CLAIM FOR RECORDKEEPING FEES.

To salvage their unfounded recordkeeping argument, Plaintiffs erroneously highlight *Mator*, a case that shows why they fall short. *Mator* illustrates how to select an appropriate comparator against which to measure the challenged plan's recordkeeping fees, expressly "disregarding" comparators where—as is the case for four of Plaintiffs' five comparators, ECF No. 81, at 36-39—plaintiffs neglected to include the indirect fees paid by those comparator plans. The Court explained:

> The District Court observed that for some comparators . . . the Mators allege that the total fee amounts are the same as the direct fee amounts shown on the Form 5500s, even though the plans also reported they paid indirect fees. We can infer that by leaving out indirect fees, the Mators underreported the total fees paid by these two plans.

*Mator*, 102 F.4th at 187. *Mator* is not alone in holding that Plaintiffs cannot state a claim by rigging the numbers like this. *See* ECF No. 81 at 37-38 (collecting cases). Plaintiffs cite no case excusing omitting the indirect fees that comparator plans paid.

Instead, Plaintiffs further undermine their claim: they argue that they were correct to omit indirect fees when calculating what the Deseret, Dow, WWP and

7

Danaher Plans paid for recordkeeping, because "those [Plan's 5500] forms entered '0' as the amount of indirect fees actually paid."[1] Opp. 28. But the Cognizant Plan's Forms 5500 did the same.[2] If—as Plaintiffs now insist—Form 5500 data is dispositive, then the same goes for Cognizant. And moreover, the Form 5500 trumps any contrary allegations. *See Genesis Bio-Pharmaceuticals, Inc. v. Chiron Corp.*, 27 F. App'x 94, 99-100 (3d Cir. 2002). In reality, Cognizant's recordkeeping fees are quite reasonable, even crediting Plaintiffs flawed comparators that supposedly support a "reasonable fee" of up to $34/plan participant. FAC ¶ 123. Specifically, Cognizant paid (based on the '0' in its Form 5500) far less than $34/participant, with a low $10.16 in 2014 and an average $22.06 per participant over the 2014 to 2022 period. Lakatos Decl. at ¶ 2. No matter how Plaintiffs slice it, their Deseret, Dow, WWP and Danaher comparators do not support their claim.

That leaves Rite-Aid as Plaintiffs' only remaining comparator, but Cognizant demonstrated that—once Rite-Aid's second recordkeeper is accounted for—Rite-Aid paid $58.36/participant in 2019. *See* ECF No. 81, at 39; Lakatos Decl. Ex. 1 (Rite-Aid 2019 Form 5500).[3] Plaintiffs' assertion that the Court should ignore what

---

[1] By the terms of the Form 5500, the "0" does not purport to cover all indirect fees, only certain "eligible" indirect fees. *See*, *e.g.*, ECF No. 82-1, at 7.

[2] *See* ECF No. 82, Ex. 87-7 at 5, 15, 25, 35, 42, 49 ($0 in indirect fees in 2014, 2016, 2017, 2018, 2019, 2020, 2021, and 2022); *id.* at 10 ($12,286 in indirect fees in 2015); *id.* at 20 ($26,742 in indirect fees in 2017).

[3] Plaintiffs' reference to Rite-Aid's recordkeeping fees in 2018 is irrelevant, because (1) Plaintiffs are comparing the Cognizant Plan's recordkeeping fees against what

8

Rite-Aid paid its second recordkeeper defies logic and common sense.

As for Plaintiffs' argument that Rite-Aid paid less than Cognizant ($58.36 in 2019, versus Cognizant's alleged $60.98 that year, FAC ¶ 121), the difference is, at best, meaningless. *Mator* holds that an inference of imprudence is appropriate where "Plan's fees were *several times larger* than what similar plans paid[.]" 102 F.4th at 185, 189 (emphasis added). Nor do Plaintiffs cite any case holding that a small difference in fees bespeaks imprudence. If anything, Rite-Aid's recordkeeping fees point the opposite direction, *i.e.*, that Cognizant was on par with its peers.[4]

Plaintiffs' inability to muster a *single* valid comparator demonstrating that Cognizant's recordkeeping fees were too high is dispositive. In *Mator*, the court relied on "fourteen comparators that paid significantly lower fees than the Plan." *Id.* at 188. Here, there is none. This failing is particularly revealing given that Plaintiffs unceremoniously abandoned the comparator plans from their original complaint—something they need not have done if those plans still supported their claims. Plaintiffs argue that those plans were "old" (Opp. 31), but that does not explain why they chose a different slate of comparators rather than updating their original comparator plans using newer Form 5500 data.

---

Rite-Aid paid in 2019 (ECF No. 73, ¶ 123) and (2) Plaintiffs admit that in 2018, Rite-Aid paid indirect fees that Plaintiffs fail to address (Opp. 28 n.3).

[4] If Cognizant's per participant fees are calculated in the manner Plaintiffs advocate in the Reply (i.e., with '0' in direct fees, as shown on Cognizant's 5500), then Cognizant paid a fee ($44.56) *less* than Rite-Aid ($58.36). Lakatos Decl. ¶ 2.

Plaintiffs grossly misread *Mator* in arguing they may artificially deflate the amounts the comparator plans paid and otherwise game their numbers, merely because they are relying on "public information." (Opp. 23, 29.) *Mator* held:

> if allegations are based on incorrect arithmetic, common sense says they are not well-pled. The calculation problems are not fatal here because even taking those problems into account, there are enough comparators, and the comparators are sufficiently similar to the Plan, to state a claim. But in a different case, calculation errors could conceivably lead to dismissal of a complaint.

102 F.4th at 190. This is such a "different case": common sense (and the express holding of *Mator*) says that failing to account for indirect compensation, ignoring payments to a second recordkeeper, and flagging plans that paid the same or more than the Plan, are errors that warrant dismissal. Nor can Plaintiffs bridge the gap by pointing to the Fidelity stipulation (Opp. 30-31), because it is just one example, which numerous courts have recognized as an outlier offering no meaningful guidance (ECF No. 81, at 40-41 (collecting cases)), and moreover, it is contrary to the lesson learned from Rite-Aid's fees ($58), which demonstrate that the fees Fidelity charged itself to service its own plan ($14 to $21) were aberrational.

Finally, in *Mator*, Plaintiffs alleged additional facts to "nudge" their "claims across the line." 102 F.4th at 186. Not so here. For example, in *Mator*, plaintiffs alleged the defendant failed to negotiate a fee cap. 102 F.4th at 185. Here, the FAC is silent on a fee cap, and judicially noticeable documents show that the Plan capped its recordkeeping fees as of 2018. ECF No. 81, at 15-16 (plan participant

10

disclosures). Plaintiffs never address those documents; instead, they merely refer back to their flawed allegations that other "comparator" plans paid less and ask the court to infer that Cognizant's fees could not have been capped. Opp. 24-25. But Plaintiffs are not entitled to an inference contrary to judicially noticeable documents.

Similarly, *Mator* noted that the "Plan's fiduciaries did not . . . solicit bids[.]" 102 F.4th at 185. Plaintiffs falsely claim they have alleged the same. Plaintiffs actually allege that "[b]ecause the Plan paid yearly amounts in recordkeeping fees that were well above industry standards each year over the Class Period, there is little to suggest that Defendants conducted an appropriate RFP at reasonable intervals." Opp. 24 (citing FAC ¶¶ 119-20). Plaintiffs thus ask the court to *infer* that Cognizant failed to solicit bids based on their deeply flawed comparators. That does not add facts, it merely stacks inference on inference.

### III. PLAINTIFFS' OPPOSITION CONFIRMS THAT THE REMAINING CLAIMS ALSO FAIL TO STATE A CLAIM.

#### A. Plaintiffs fail to state a claim based on Cognizant's use of the mutual fund version of the American Century TDFs.

Plaintiffs do not dispute that CITs and mutual funds are disparate products. ECF No. 81, at 28. Plaintiffs allege that as a result, CITs "are lower-cost investment alternatives." FAC ¶ 101. The Supreme Court instructs that for ERISA fiduciary breach cases, the "appropriate inquiry . . . will necessarily be context specific," requiring "due regard" for "the reasonable judgments a fiduciary may make based

11

on her experience and expertise." *Hughes*, 595 U.S. at 177. Yet Plaintiffs advocate an approach that disregards *Hughes*'s directive, and instead would require that plan fiduciaries *always* choose a CIT—or else be subject to discovery. *See generally Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013) ("*St. Vincent*") ("the prospect of discovery in a suit claiming breach of fiduciary duty is ominous" and creates "*in terrorem* . . . settlement value"). Plaintiffs' approach also ignores the well-established principle that ERISA does not require fiduciaries "to scour the market to find and offer the cheapest possible fund." *Luense*, 541 F. Supp. 3d at 511; *Silva*, 2020 WL 12574912, at *5. Cognizant's cases honor the Court's guidance and basic ERISA precepts; they should govern the outcome here.

Nor do plaintiffs distinguish those cases. First, Plaintiffs do not confront *White*'s holding that "it is inappropriate to compare distinct investment vehicles [*i.e.*, mutual funds and CITs] solely by cost, since their essential features differ so significantly." *White v. Chevron Corp.*, 2016 WL 4502808, at *12 (N.D. Cal. Aug. 29, 2016). Second, Plaintiffs assert that *Davis v. Salesforce.com, Inc.*, 2020 WL 5893405 (N.D. Cal. Oct. 5, 2020), was overturned by the Ninth Circuit. Not so. That decision was never considered by the Ninth Circuit on appeal. A later decision—after plaintiffs amended and bolstered their relevant allegations—was overturned by the Ninth Circuit in a non-precedential decision. *See Davis v.*

*Salesforce.com, Inc.*, 2022 WL 1055557, at *1 (9th Cir. Apr. 8, 2022). Moreover, the *Davis* amended complaint added, among other things, specific return data on the CITs and the mutual funds. *Compare* Complaint ¶ 93, *Davis*, No. 20-CV-01753, ECF No. 1, *with* Second Amended Complaint ¶ 93-95, *id.,* ECF No. 101-1; *cf. Davis*, 2022 WL 1055557, at *2 (9th Cir. Apr. 8, 2022) (CITs "had better annual returns" than the mutual funds). Thus, consistent with *White*, plaintiffs in *Davis* did not rely on cost alone, and consistent with *Hughes*, provided broader context absent here.

Third, the Plaintiffs challenge *Matney v. Barrick Gold of North America, Inc.*, 2022 WL 1186532 (D. Utah Apr. 21, 2022), *aff'd*, 80 F.4th 1136 (10th Cir. 2023), noting that the Tenth Circuit affirmed dismissal, holding that CITs and mutual funds sometimes may be compared. Opp. 41-42. But the Tenth Circuit affirmed dismissal because the allegations that "investments in the collective trusts are identical to those held by the mutual fund, except they cost less" were too vague. *Id.* Plaintiffs' allegations here are nearly identical. *See* FAC ¶ 102. And Plaintiffs' citation to *Nunez v. B. Braun Medical, Inc.*, is equally unavailing. No. 20-cv-04195 (E.D. Pa. June 4, 2021). It merely cites *Peterson v. Insurance Services Office, Inc.*, 2021 WL 1382168 (D.N.J. Apr. 13, 2021), which barely mentions CITs. Neither comports with *Hughes*.

### B. Plaintiffs' share class claims should be dismissed.

First, Plaintiffs concede that they did not invest in the MassMutual Funds, but

13

mistakenly argue that they have standing because they bought the American Century TDFs. But under *Boley v. Universal Health Services*, 36 F.4th 124 (3d Cir. 2022), on which Plaintiffs rely (Opp. 36), Article III does not afford Plaintiffs standing to challenge *every* fund in the plan, only those "allegedly imprudent due to the *same* decisions or courses of conduct" that supposedly harmed the funds Plaintiffs purchased. *Boley,* 36 F.4th at 132 (emphasis added). Here, Plaintiffs challenge the American Century TDFs on performance grounds and for not being CITs. Thus, Plaintiffs' challenge to the MassMutual funds has nothing to do with those issues—instead, Plaintiffs argue that Cognizant chose the wrong share classes of the MassMutual funds. Such different theories of liability inherently do not implicate "the same decisions or courses of conduct" as in *Boley*, 36 F.4th at 132.

Second, if the Court reaches the merits of this claim, Plaintiffs have failed to rebut Cognizant's showing that the share classes the Plan used yielded a net economic benefit for the Plan due to revenue sharing. ECF No. 81, at 33-35. The cases Plaintiffs cite only underscore that Cognizant's position is correct. For example, Plaintiffs rely on *Mator*, but in that case, the court concluded that revenue sharing could not justify the share classes chosen because revenue sharing covered *overpriced* recordkeeping. Here, as shown above, Plaintiffs make no such showing. Plaintiffs also cite *Perkins v. United Surgical Partners International*, 2024 WL 1574342 (5th Cir. Apr. 11, 2024), which (similarly to *Mator*) concluded that revenue

14

sharing could not make sense where the defendant was paying recordkeeping fees of two to four times that of comparable plans, which again is not alleged here.

Moreover, Plaintiffs' cases involved only theoretical benefits of revenue sharing. The FAC alleges actual figures, showing that revenue sharing netted Cognizant a better price versus the open market. ECF No. 81 at 33-35. Plaintiffs do not contest the accuracy of that showing, nor dispute that the numbers come directly from their FAC. Given the concrete allegations establishing that revenue sharing benefited the plan, dismissal is appropriate. *Matney*, 80 F.4th at 1152.

### C. Plaintiffs fail to state a claim for breach of the duty to monitor.

Plaintiffs concede that their monitoring claim is derivative. Opp. 50. Accordingly, it must be dismissed with the dismissal of Plaintiffs' substantive claims. *Id.* Plaintiffs have no response to Defendant's argument that they fail to allege the elements of the monitoring claim (ECF No. 81, at 46-47), other than to assert that if their substantive claim survives, the monitoring claim *automatically* survives. But the cases Plaintiffs cite hold only that having a valid underlying claim is a pre-requisite to bring a monitoring claim. *See*, *e.g.*, *Mator*, 102 F.4th at 191; *Binder*, 2024 WL 1096819, at *5. Those cases do not address, let alone purport to eliminate, the additional elements needed to allege a monitoring claim. *Id.*

## CONCLUSION

For the foregoing reasons, the First Amended Complaint should be dismissed.

| | |
|---|---|
| Dated: October 16, 2024 | By: /s/ Bryan Nese |

Bryan Nese
 *bnese@mayerbrown.com*
Alex Lakatos
 *alakatos@mayerbrown.com*
1999 K Street NW
Washington, DC 20006
Telephone: (202) 263-3000

Nancy Ross
 *nross@mayerbrown.com*
71 South Wacker Drive
Chicago, IL 60606-4637
Telephone: (312) 782-0600

*Counsel for Defendants*

16