**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| MARK MILANO, ROBERT CAMERON, RODNEY HERGENRADER, KATHERINE H. JONCAS and CHARLES VAN HOOSER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION, THE BOARD OF DIRECTORS OF COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION, THE 401(K) INVESTMENT COMMITTEE OF COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION and JOHN DOES 1-30.<br><br>Defendants. | ) | **CIVIL ACTION NO.:**<br><br>**2:20-cv-17793** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF CLASS FOR SETTLEMENT PURPOSES, APPROVAL OF FORM AND MANNER OF CLASS NOTICE, PRELIMINARY APPROVAL OF PLAN OF ALLOCATION AND SCHEDULING OF A FINAL APPROVAL HEARING**

# TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. PROCEDURAL HISTORY ........ 2

III. SETTLEMENT NEGOTIATIONS ........ 5

A. Class Notice and Administration of Claims ........ 6

B. The Proposed Settlement ........ 7

C. Fees and Expenses ........ 8

IV. ARGUMENT ........ 8

A. Legal Standard ........ 8

B. The Settlement Satisfies the *GMC* Factors Underscoring its Fairness ........ 9

1. Arm's Length Negotiations ........ 9

2. Amount of Discovery ........ 10

3. Experience of Counsel ........ 10

4. Objections ........ 11

C. The Third Circuit's *Girsh* Factors are also Satisfied ........ 11

1. The Complexity, Expense, and Likely Duration of the Litigation ........ 11

2. The Reaction of the Class to the Settlement ........ 12

3. The Stage of the Proceedings and the Amount of Discovery ....... 12

4. The Risks of Establishing Liability and Damages ....... 13

5. The Risks of Maintaining the Class Action through Trial ....... 14

6. The Ability of the Defendants to Withstand a Greater Judgment ....... 15

7. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of all Attendant Risks of Litigation ....... 16

8. The Requirements of FED. R. CIV. P. 23(e)(2) Also Are, or Likely Will Be, Satisfied ....... 19

V. THE PROPOSED NOTICE PLAN SHOULD BE APPROVED ....... 21

A. The Proposed Notice Plan Meets the Requirements of Due Process ....... 21

B. Description of the Notice Plan ....... 22

VI. CLASS CERTIFICATION IS APPROPRIATE ....... 23

A. The Proposed Class Satisfied the Requirements of Rule 23(a) ....... 24

1. The Class is Sufficiently Numerous ....... 24

2. Common Questions of Law and Fact Abound ....... 25

3. Plaintiffs' Claims are Typical of the Class ....... 26

4. Plaintiffs and Class Counsel Will Adequately Protect the Interest of the Class ....... 21

i. Plaintiffs Have No Conflicts with Other Members of the Class and Will Vigorously Prosecute this Action On Behalf of the Class ....................................27

ii. Plaintiffs' Counsel Have No Conflicts With the Class, Are Qualified and Experienced, and Will Vigorously Prosecute This Action for the Class ............29

B. The Class May Be Properly Certified Under Rule 23(b)(1) ...............31

1. Certification Under Rule 23(b)(1)(B) is Most Appropriate ....................................................................31

2. Certification is Also Appropriate Under Section 23(b)(1)(A) ....................................................................32

VII. CONCLUSION ....................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abbott v. Lockheed Martin Corp.*,
2015 WL 4398475 (S.D. Ill. July 17, 2015) ....................21

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997) ....................31

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006) ....................27

*Beesley v. Int'l Paper Co.*,
2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ....................21

*Boley, et al. v. Universal Health Servs., Inc., et al.*,
2021 WL 859399 (E.D. Pa. Mar. 8, 2021) ....................30

*In re: Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ....................13

*Clark v. Duke Univ.*,
2018 WL 1801946 (M.D.N.C. April 13, 2018) ....................32

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010) ....................2

*In re Flonase Antitrust Litig.*,
951 F.Supp.2d 739 (E.D. Pa. 2013) ....................13

*Fulton-Green v. Accolade, Inc.*,
No. 18-274, 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) ....................27

*In re: Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ("*GMC*") ....................*Passim*

*Girsh v. Jepson*,

521 F.2d 153 (3d. Cir. 1975)....................................................................*Passim*

*Halley v. Honeywell Int'l, Inc.*,
861 F.3d 481 (3d Cir. 2017)....................................................................11

*Harry M. v. PA Dept. of Public Welfare*,
2013 WL 1386286 (M.D. Pa. Apr. 4, 2013)......................................................8, 21

*In re: Honeywell Int'l Sec. Litig.*,
211 F.R.D. 255 (D.N.J. 2002)....................................................................26

*In re Ikon Office Solutions, Inc.*,
191 F.R.D. 457 (E.D. Pa. 2000)....................................................................24

*In re: Janney Montgomery Scott LLC Fin. Consult. Litig.*,
2009 WL 2137224 (E.D. Pa. July 16, 2009)....................................................................23

*Jones v. NovaStar Fin., Inc.*,
257 F.R.D. 181 (W.D. Mo. 2009)....................................................................33

*Karg et al. v. Transamerica Corp.*, , 30
2020 WL 3400199 (N.D. Iowa Mar. 25, 2020)..............................................26, 29

*Koch v. Dwyer*,
No. 98-CV-5519, 2001 WL 289972 (S.D.N.Y. Mar. 23, 2001)..............................33

*Krueger v. Ameriprise Financial*,
2015 WL 4246879 (D. Minn. July 13, 2015)..................................................21

*Kruger v. Novant Health, Inc.*,
2016 WL 6769066 (M.D.N.C. Sept. 29, 2016)..................................................21

*In re: Linerboard Antitrust Litig.*,
321 F. Supp. 2d 619 (E.D. Pa. 2004)....................................................................15

*Mass. Mut. Life Ins. Co.*,
473 U.S. 134 (1985)....................................................................32

*McDonald v. Edward Jones*,
791 Fed.Appx. 638 (8th Cir. 2020)....................................................................21

*In re: Merck & Co., Inc. Securities, Derivative & ERISA Litig.*,
MDL No. 1658, 2009 WL 331426 (D.N.J. Feb. 10, 2009) ...............................24, 33

*Moore v. Comcast Corp.*,
268 F.R.D. 530 (E.D. Pa. 2010)...........................................................................24, 32

*Moore v. Simpson*,
1997 WL 570769 (N.D. Ill. Sept. 10, 1997) ..........................................................25

*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306 (1950)...............................................................................................21

*In re National Football League Players' Concussion Injury Litig*. (*NFL Concussion Injury Litig.*),
961 F. Supp. 2d 708 (E.D. Pa. 2014) .......................................................................2

*In re: Nat'l Football League Players Concussion Injury Litig.*,
307 F.R.D. 351 (E.D. Pa. 2015)..............................................................................15

*In re: Nat'l Football League Players Concussion Injury Litig.*,
821 F.3d 410, 437 (3d Cir. 2016),
*as amended* (May 2, 2016) ("*NFL*")....................................................12, 13, 16, 27

*In re: New Jersey Tax Sales Certification Antitrust Litig.*,
750 Fed.Appx 73 (3d Cir. 2018) ("*NJ Tax Sales*")............................................9, 11

*In re: Nortel Networks Corp. ERISA Litig.*,
2009 WL 3294827 (M.D. Tenn. Sept. 2, 2009)......................................................33

*Nunez v. B. Braun Med., Inc*.,
No. 20-4195 (E.D. Pa. Aug. 18, 2023) ...................................................................14

*Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ("*Prudential*") ..............................................10 ,13, 16

*Reibstein v. Rite Aid Corp.*,
761 F.Supp.2d 241 (E.D. Pa. 2011) .......................................................................15

*In re: Rent-Way Sec. Litig.*,
305 F. Supp. 2d 491 (W.D. Pa. 2003).....................................................................14

*In re: Schering-Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009) ("*Schering-Plough ERISA")* .......................... 14, 24, 31

*In re Schering-Plough Enhance ERISA Litig.*,
2012 WL 1964451 (D.N.J. Dec. 16, 2010) .......................................................... 24

*Sims v. BB&T Corp.*,
2017 WL 3730552 (M.D.N.C. Aug. 28, 2017) ...................................................... 26

*Spano v. The Boeing Co.,*
2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) ......................................................... 21

*Stanford* v. *Foamex, L.P.*,
263 F.R.D. 156 (E.D. Pa. 2009) .......................................................... 24, 26, 28, 33

*Sullivan v. DB Investments, Inc.*,
667 F.3d 273 (3d Cir. 2011) ................................................................................ 15

*Thomas v. NCO Fin. Sys.*,
No. 00–5118, 2002 WL 1773035 (E.D. Pa. July 31, 2002) ..................................... 2

*Thomas v. SmithKline Beecham Corp.*,
201 F.R.D. 386 (E.D. Pa. 2001) ........................................................................... 25

*Tracey v. Mass. Inst. Tech.*,
2018 WL 5114167 (D. Mass. Oct. 19, 2018) ........................................................ 26

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .............................................................................................. 25

*In re: Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ("*Warfarin*") ............................................ 8, 12, 13 ,15

**STATUTES**

28 U.S.C. §§ 1332(d), 1453, and 1711-1715 ....................................................... 33

FED. R. CIV. P. 23 ...................................................................................... 26, 29, 31, 33

FED. R. CIV. P. 23(a) .......... 24

FED. R. CIV. P. 23(a)(1) .......... 10, 24, 25

FED. R. CIV. P. 23(a)(2) .......... 26

FED. R. CIV. P. 23(a)(4) .......... 27, 29

FED. R. CIV. P. 23(b) .......... 24

FED. R. CIV. P. 23(b)(1) .......... 14, 16, 31, 32

FED. R. CIV. P. 23(b)(2) .......... 33

FED. R. CIV. P. 23(b)(3) .......... 31

FED. R. CIV. P. 23(b)(1)(A) .......... 31, 32, 33

FED. R. CIV. P. 23(b)(1)(B) .......... 31, 32, 33

FED. R. CIV. P. 23(b)(1)(B)(i) .......... 9, 19, 20, 21

FED. R. CIV. P. 23(c)(2) .......... 21

FED. R. CIV. P. 23(e) .......... 9

FED. R. CIV. P. 23(e)(2) .......... *Passim*

FED. R. CIV. P. 23(e)(2)(C)(ii) .......... 20

FED. R. CIV. P. 23(e)(2)(C)(ii), (C)(iii) and (D) .......... 20

FED. R. CIV. P. 23(e)(2)(D) .......... 22

FED. R. CIV. P. 23(e)(3) .......... 20

FED. R. CIV. P. 23(g) .......... 29

FED. R. CIV. P. 23(g)(1)(A) .......... 29

FED. R. CIV. P. 23(g)(1)(B) .......................................................................... 29

**Other Sources**

Class Action Fairness Act of 2005 (“CAFA”) .......................................................33

Employee Retirement Income Security Act of 1974 ......................................*Passim*

## I. INTRODUCTION

Plaintiffs, Mark Milano, Robert Cameron, Rodney Hergenrader, Katherine H. Joncas and Charles Van Hooser ("Plaintiffs"), by and through their undersigned counsel, on behalf of the Cognizant Technology Solutions 401(k) Savings Plan (the "Plan"), respectfully submit this Memorandum of Law in support of their unopposed motion for preliminary approval of the proposed Settlement[1] of this class action. The operative complaint alleged violations of fiduciary duties of prudence imposed by the Employee Retirement Income Security Act of 1974, § 404(a), 29 U.S.C. § 1104(a).

After years of hard-fought litigation, the Settling Parties[2] are pleased that they are able to present a proposed settlement of a cash payment of $2,800,000.00 (Two Million Eight Hundred Thousand Dollars) for preliminary approval. The Settling Parties agreed to the proposed Settlement only after vigorous arm's-length negotiations between counsel experienced in ERISA class actions and under the auspices Robert A. Meyer Esq., of JAMS, a highly qualified, experienced mediator who has mediated numerous ERISA breach of fiduciary duty cases.

---

[1] The Settlement Agreement is attached to the Gyandoh Decl. as Exhibit 1 and has several exhibits. These exhibits are: A (Postcard Notice); B (Long Form Settlement Notice); C (Proposed Plan of Allocation); D (Proposed Preliminary Approval Order); E (Proposed Final Approval Order); and F (CAFA Notice). Undefined terms herein shall have the meaning ascribed to them in the Settlement Agreement.

[2] Defined in the Settlement Agreement as Class Representatives, on behalf of themselves, each of the Class Members, and Defendants.

Plaintiffs believe the Settlement is an excellent result, providing a substantial, immediate payment to Settlement Class members in light of potential damages, and eliminating the risks and cost of trial. A trial could result in a reduced recovery or no recovery at all. Hence, "a strong public policy exists, which is particularly muscular in class action suits, favoring settlement of disputes, finality of judgments and the termination of litigation." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010). As set forth below, the settlement is fair, reasonable, and adequate under governing law, and meets all prerequisites for preliminary approval and dissemination of the Long Form and Short Form Postcard Settlement Notices. "At the preliminary approval stage, the bar to meet the 'fair, reasonable and adequate' standard is lowered, and the court is required to determine whether 'the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies […] and whether it appears to fall within the range of possible approval.'" *In re National Football League Players' Concussion Injury Litig*. (*NFL Concussion Injury Litig.*), 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) (quoting *Thomas v. NCO Fin. Sys.*, No. 00–5118, 2002 WL 1773035, at *5 (E.D. Pa. July 31, 2002)).

## II. PROCEDURAL HISTORY[3]

On December 20, 2020, Mark Milano, Robert Cameron, Rodney Hergenrader,

---

[3] The full procedural history of this matter is recounted in the Declaration of Mark K. Gyandoh ("Gyandoh Decl."), filed contemporaneously with this memorandum, at ¶¶ 3-24.

Katherine H. Joncas, and Charles Van Hooser filed a Class Action Complaint. *See* ECF No. 1. Plaintiffs' claims concern Defendants' alleged breaches of fiduciary duty as Plan fiduciaries by, *inter alia*, (1) failing to objectively and adequately review the Plan's investment portfolio with due care to ensure that each investment option was prudent, in terms of cost and/or performance; (2) maintaining certain funds in the Plan despite the availability of identical or similar investment options with lower costs and/or better performance histories; and (3) failing to control the Plan's recordkeeping and administrative ("RKA") costs.

Defendants deny each of these claims and deny that they ever engaged in any wrongful conduct.

Defendants filed their Motion to Dismiss Plaintiffs' Complaint on February 16, 2021. *See* ECF Nos. 15-17. On March 18, 2021, Plaintiffs filed their Opposition to Defendants' Motion to Dismiss Plaintiffs' Complaint. *See* ECF Nos. 28-19. Defendants filed their Reply Memorandum of Law in Support of their Motion to Dismiss on April 8, 2021. *See* ECF No. 30. Plaintiffs and Defendants filed supplemental briefings in support of their respective positions. *See* ECF Nos. 31-34; 37-40; 47-48. On March 28, 2023, this Court issued a Text Order that Defendants' previous Motion to Dismiss was administratively terminated without prejudice, directing Defendants to file a new Notice of Motion to Dismiss. *See* ECF No. 49. Defendants filed their new Motion to Dismiss Plaintiffs' Complaint on April 3, 2023,

along with all previously filed moving papers, opposition papers, reply papers and supplemental briefs simultaneously. *See* ECF Nos. 50-64. This Court issued an Order on May 9, 2024, requesting Plaintiffs file a letter explaining standing for each allegation or an Amended Complaint eliminating standing issues. *See* ECF No. 68. On June 21, 2024, Plaintiffs filed their First Amended Complaint. *See* ECF No. 73. Defendants filed their Motion to Dismiss the First Amended Complaint on August 15, 2024. *See* ECF Nos. 80-82. On September 16, 2024, Plaintiffs filed their Opposition to Defendants' Motion to Dismiss First Amended Complaint. *See* ECF Nos. 85-86. Defendants filed their Reply Memorandum of Law in Support of Defendants' Motion to Dismiss Amended Complaint on October 16, 2024. *See* ECF Nos. 87-88. This Court issued another Text Order on January 24, 2025, directing Plaintiffs to file a letter regarding standing for allegations in the Amended Complaint or seek leave to file another complaint. *See* ECF No. 95. On January 29, 2025, Plaintiffs filed their letter regarding Standing and Investments. *See* ECF No. 96. This Court issued a Text Order on January 30, 2025 directing Defendants to respond to Plaintiffs' letter. *See* ECF No. 97. Defendants filed their letter response on February 4, 2025. *See* ECF No. 98. This Court issued its Opinion and Order on October 25, 2025, directing the Parties to file letters on how they wish to proceed, and denying, without prejudice, the Motion to Dismiss. *See* ECF No. 99.

The Parties filed their letters on November 5, 2025. *See* ECF Nos. 101 and

102. This Court issued a Text Order on November 6, 2025, stating that Plaintiffs may file a Letter if they wish to amend their complaint and Defendants may respond with a letter brief in opposition. *See* ECF No. 103.

On November 7, 2025, Plaintiffs filed a Letter. *See* ECF No. 104. This Court issued a Text Order on November 13, 2025, granting leave to file an amended complaint. *See* ECF No. 105. On December 1, 2025, Plaintiffs filed their Second Amended Complaint. *See* ECF No. 108. Defendants filed their Notice of Motion to Dismiss Plaintiffs' Second Amended Complaint on January 16, 2026. *See* ECF Nos. 112-114. On April 30, 2026, after a brief adjournment to participate in mediation with Robert A. Meyer Esq., of JAMS, the Parties filed a Letter to Update the Court and to request a Proposed Briefing Schedule. *See* ECF No. 118. This Court granted the Parties Proposed Briefing Schedule on May 4, 2026. *See* ECF No. 119. Defendants filed their Motion to Dismiss the Second Amended Complaint on May 29, 2026. *See* ECF Nos. 120-123. On June 6, 2026, the Parties filed a Joint Notice of Settlement and Motion to Stay All Deadlines (ECF No. 123), which the Court granted on June 18, 2026. *See* ECF No. 124.

## III. SETTLEMENT NEGOTIATIONS

On April 24, 2026, the Settling Parties attended a mediation session with Robert A. Meyer, Esquire, of JAMs. Gyandoh Decl., at ¶ 28. A settlement was not reached during the initial mediation session. Following the mediation session, the

Parties continued to communicate via telephone with each other and with Mr. Meyer to negotiate a possible resolution. *Id*. On June 3, 2026, the Parties accepted Mr. Meyer's double-blind mediator's proposal to resolve the litigation. *Id*.

The Settlement provides for $2,800,000.00 (two million, eight-hundred hundred thousand dollars), which Plaintiffs believe is a fair and adequate settlement. Plaintiffs' Counsel evaluated numerous damages scenarios involving the amounts paid for recordkeeping and the potentially excessive fees of the Plan's investment options. Plaintiffs' Counsel also evaluated the risks of proceeding without a settlement. The Settlement amount likely represents at least 21% of the best-case outcome for Plaintiffs.

**A. Class Notice and Administration of Claims**

Plaintiffs have selected Angeion Group LLC ("Angeion") to be the Settlement Administrator. Gyandoh Decl., at ¶ 41. Angeion is highly experienced in class action claims administration. *Id*. Upon preliminary approval, Angeion will mail, by first class mail, the Court-approved Short Form Postcard Notice to Settlement Class members using addresses from documents associated with the Plan. *Id*. Angeion will administer a skip trace and receive updated address information for any notices that are returned for lack of a forwarding address and re-mail the notices to the updated addresses. *Id*. Additionally, Angeion will establish a settlement website providing Settlement Class members with important case documents, pertinent information,

and contact information for the Settlement Administrator, Class counsel, and Defense counsel. *Id*., at ¶ 42. Lastly, Angeion will institute a case-specific toll-free number for members to listen to an Interactive Voice Response ("IVR") system or speak with a live agent. *Id*., at ¶ 43. The Long Form and Short Form Postcard Notices, website, and telephone number will inform Settlement Class members of their rights to object, deadline to object, their inability to opt-out, Plaintiffs' incentive awards, and Class Counsel's request for attorney's fees and expenses.

**B. The Proposed Settlement**

Defendants deny all claims in the Action, and deny that they ever engaged in any wrongful conduct. *See* Gyandoh Decl., ¶37. However, Defendants approve of the Settlement relief and terms. The Settlement provides that Defendants will pay $2,800,000.00 – the Gross Settlement Amount – to be allocated to participants on a *pro-rata* basis pursuant to the proposed Plan of Allocation in exchange for releases and dismissal of this action. *Id*., ¶ 37. The Gross Settlement Fund will be used to pay the participants' recoveries, administrative expenses to facilitate the Settlement, Plaintiffs' counsel's attorneys' fees and costs, Class Representatives' Compensation if awarded by the Court, all fees and expenses of the Independent Fiduciary, not to exceed $25,000, and all fees, expenses, and costs associated with providing CAFA Notices. *Id*. The Class Members include all individuals in the Settlement Class:

> [A]ll persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Plan, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan, at any time during the Class Period [from December 2, 2014, through the date of the Preliminary Approval Order].

Settlement § 2.42.

### C. Fees and Expenses

The Gross Settlement Amount is inclusive of an attorney fees award not to exceed thirty-three and one third percent (33 1/3%) of the Gross Settlement Amount. Put differently, the attorney fee award is a maximum of $933,333.33. The Settlement Agreement also provides for a reimbursement of attorney expenses up to $150,000 and a maximum of $10,000 incentive awards for each of the Class Representatives for their work in bringing the case forward. These amounts are to be paid from the Gross Settlement Amount.

## IV. ARGUMENT

### A. Legal Standard

"[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *In re: Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("*Warfarin*"). "Review of a proposed class action settlement involves a two-step process: preliminary approval and a subsequent fairness hearing." *Harry M. v. PA Dept. of Public Welfare*, 2013 WL 1386286, at *1 (M.D. Pa. Apr. 4, 2013). At the preliminary approval stage, courts must apply the *GMC*

test to determine whether: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re: Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) ("*GMC*"). If these factors are satisfied, the settlement is presumed to be fair. *Id.* At the final approval stage, the district court must determine whether "the proposed settlement is 'fair, reasonable and adequate.'" *In re: New Jersey Tax Sales Certification Antitrust Litig.*, 750 Fed.Appx 73, 77 (3d Cir. 2018) ("*NJ Tax Sales*"), quoting FED. R. CIV. P. 23(e). To make this determination, courts in this circuit employ the more rigorous test set forth in *Girsh v. Jepson*, 521 F.2d 153,157 (3d. Cir. 1975).

Preliminary approval should also be granted, and notice to the class authorized, if "the court will likely be able to . . . approve the proposal under." FED. R. CIV. P. 23(e)(1(B)(i).

### B. The Settlement Satisfies the *GMC* Factors Underscoring its Fairness

#### 1. Arm's Length Negotiations

The settlement negotiations were certainly at arm's-length, readily satisfying the first prong of the *GMC* test. The Parties settled this matter after a full day mediation session and continued negotiations following the mediation under the auspices of a Robert A. Meyer Esq., of JAMS, a highly qualified, experienced

mediator who has mediated numerous ERISA breach of fiduciary duty cases. *See* Gyandoh Decl., ¶¶ 28-30.

**2. Amount of Discovery**

Parties should have an "adequate appreciation" of the merits in settling a case. *Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998) ("*Prudential*") (citing *GMC,* 55 F.3d at 813). The discovery efforts in this Action were meaningful. *See* Gyandoh Decl., ¶¶ 26-27. Before initiating this action, Plaintiffs consulted with their in-house experts, reviewed publicly filed Plan documents, requesting and reviewing documents from the Defendants pursuant to ERISA § 104(b)(4) and Plaintiffs' personal account information. *See* Gyandoh Decl., ¶ 3. On February 2, 2021, the Parties exchanged their Initial Disclosures pursuant to Federal Rule of Civil Procedure 26(A)(1). *Id.*, ¶¶ 26-27. From independent research and discovery productions, Plaintiffs' counsel, in consultation with Plaintiffs' consulting experts, were able to assess the strengths and weaknesses of Plaintiffs' claims, as well as calculate potential Class-wide damages. *See* Gyandoh Decl., ¶ 4. The second *GMC* prong is thus amply satisfied.

**3. Experience of Counsel**

Third, both Plaintiffs' counsel and Defendants' counsel are experienced in ERISA class actions of this type and approve of the Settlement. As discussed in greater detail *infra*, Section VI.A.4, the vast experience of Class Counsel in

analogous actions weighs strongly in favor of the fairness of the proposed Settlement, a Settlement which Class Counsel firmly stands behind. Gyandoh Decl., ¶¶ 44-56. Counsel for Defendants, Mayer Brown, who have agreed to the Settlement, are also one of the preeminent firms in the country defending analogous ERISA class actions.[4]

**4. Objections**

The fourth prong of the *GMC* test is not fully assessable at this time because notice to proposed Class members has not yet been provided.

**C. The Third Circuit's *Girsh* Factors are also Satisfied**

Although satisfaction of the *GMC* test is sufficient for preliminary approval, the Settlement also meets the more exacting approval standard articulated by the Third Circuit in *Girsh* and in Rule 23(e)(2). A court may approve a settlement even if it does not find all of these factors militate in favor of approval. *NJ Tax Sales*, 750 Fed. Appx. at 77, *citing Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 489-90, 491 (3d Cir. 2017) (affirming settlement approval where some factors did not weigh in favor of settlement).

**1. The Complexity, Expense, and Likely Duration of the Litigation**

"The first factor 'captures the probable costs, in both time and money, of

[4] *See* https://www.mayerbrown.com/en/services/erisa-litigaton

continued litigation.'" *In re: Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 437 (3d Cir. 2016), *as amended* (May 2, 2016) ("*NFL*") (quoting *Warfarin*, 391 F.3d at 535-36 (internal quotation omitted)). Here, the probable costs of continued litigation with respect to both time and money are high. Considerable additional discovery, both paper and testimonial, would be required before the case would be trial ready, and there would be voluminous briefing ahead in the absence of the proposed Settlement. The Settlement in this Action comes at an opportune time given if the litigation continues, there would be substantial expense to the Parties associated with necessary factual and expert discovery and assorted motion practice.

**2. The Reaction of the Class to the Settlement**

As noted in Section II.B.4 *supra*, analysis of this factor is premature as notice of the proposed Settlement will be disseminated to the Settlement Class only after this Court grants preliminary approval of the Settlement.

**3. The Stage of the Proceedings and the Amount of Discovery**

As with the second prong of the *GMC* test, pursuant to the third *Girsh* factor, the Court must consider the "degree of case development that Class Counsel have accomplished prior to Settlement," including the type and amount of discovery already undertaken. *GMC*, 55 F.3d at 813. "Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before

negotiating." *NFL*, 821 F.3d at 438-39 (3d Cir. 2016), quoting *Warfarin*, 391 F.3d at 537 (internal quotation omitted). As discussed *supra*, and in Plaintiffs' Counsel's declaration, the totality of the Parties' discovery efforts favors approval of the Settlement.

### 4. The Risks of Establishing Liability and Damages

The fourth and fifth *Girsh* factors, which require examination of the risks of establishing liability and damages respectively, are "closely related" and therefore are properly addressed together. *In re Flonase Antitrust Litig.*, 951 F.Supp.2d 739, 744 (E.D. Pa. 2013). "By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them," *GMC*, 55 F.3d at 814, and these inquiries "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *Prudential*, 148 F.3d at 319; *see also In re: Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001), quoting *GMC*, 55 F.3d at 816.

Regarding establishing liability, in this complex ERISA Action, Plaintiffs would proffer their liability and damages experts, which would undoubtedly be countered by Defendants' proffered experts. Ultimately, a battle of experts presenting differing opinions as to the prudence of the conduct of Defendants and

starkly different views on liability would ensue and the factfinder "would therefore be faced with competing expert opinions representing very different damage estimates[,] . . . adding further uncertainty." *In re: Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 506 (W.D. Pa. 2003). Although a trial on the merits in any case always entails some risk, in the context of ERISA breach of fiduciary duty class actions, the risk is even more considerable. Indeed, the undersigned is particularly qualified to realistically evaluate the risks of continued litigation, as he tried an analogous case to an unfavorable verdict for plaintiffs in *Nunez v. B. Braun Med., Inc.*, No. 20-4195 (E.D. Pa. Aug. 18, 2023). Gyandoh Decl, ¶ 56.

**5. The Risks of Maintaining the Class Action through Trial**

The sixth *Girsch* factor requires the Court to examine the risks of maintaining the class-action through trial due to the fact "[t]he value of a class action depends largely on the certification of the class because, not only does the aggregation of the claims enlarge the value of the suit, but often the combination of the individual cases also pools litigation resources and may facilitate proof on the merits." *GMC*, 55 F.3d at 817. "Thus, the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the action." *Id.*

The Third Circuit has referred to ERISA derivative actions brought on behalf of a plan and its participants, such as the instant Action, as "paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class." *In re: Schering-*

*Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) ("*Schering-Plough ERISA*"). This factor too militates in favor of settlement as the settlement eliminates the risks of not being able to establish and maintain the class through trial.

### 6. The Ability of the Defendants to Withstand a Greater Judgment

The seventh *Girsh* factor requires the Court to consider "whether the defendants could withstand a judgment for an amount significantly greater than the settlement." *Warfarin*, 391 F.3d at 537-38. The Third Circuit has noted, "in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 323 (3d Cir. 2011). This is because, "when there is no 'reason to believe that Defendants face any risk of financial instability[,] . . . this factor is largely irrelevant.'" *In re: Nat'l Football League Players Concussion Injury Litig.*, 307 F.R.D. 351, 394 (E.D. Pa. 2015) (quoting *Reibstein v. Rite Aid Corp.*, 761 F.Supp.2d 241, 254 (E.D. Pa. 2011)). Thus, "the settling defendant's ability to pay greater amounts [may be] outweighed by the risk that the plaintiffs would not be able to achieve any greater recovery at trial." *In re: Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 632 (E.D. Pa. 2004).

While Defendants could likely withstand a judgment in an amount larger than the Settlement amount, the risks and expenses attendant to continuing this litigation,

combined with the immediacy of the benefit to Settlement Class members, easily outweigh this factor.

#### 7. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of all Attendant Risks of Litigation

"According to *Girsh*, courts approving settlements should determine a range of reasonable settlements in light of the best possible recovery (the eighth *Girsh* factor) and a range in light of all the attendant risks of litigation (the ninth [*Girsh*] factor)." *GMC*, 55 F.3d at 806. To assess the reasonableness of a settlement in a case such as this, seeking primarily monetary relief, a court should compare "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing . . . with the amount of the proposed settlement." *NFL,* 821 F.3d at 440, quoting *Prudential*, 148 F.3d at 322 (internal quotation omitted). In determining the range of recovery in this Action, one extreme is the possibility Defendants might prevail on one or more of their legal or factual arguments to defeat liability entirely. While Plaintiffs are confident of the strength of the claims asserted, they recognize this possibility cannot be discounted completely.

Here, Plaintiffs' claims fell under three general theories of liability. The first theory is that during the Class Period, the American Century Target Date Funds materially underperformed when compared to its benchmarks and peers costing the

Plan tens of millions of dollars in lost returns. Gyandoh Decl., ¶ 30. The second theory is that Defendants failed to timely consider available lower cost identical mutual funds to the funds offered by MassMutual. *Id*. The third theory is that Defendants' imprudent fee monitoring process resulted in excessive recordkeeping and administrative fees for the Plan and its participants. *Id*.

Plaintiffs' initial assessment of maximum potential damages to the Plan was in the tens of millions of dollars. However, through the rigors of the mediation process, including analysis of points made by the mediator and the Defendants, and analysis of data, Plaintiffs modified their damages assessment.

Among some of their points, Defendants advanced the arguments that the challenged American Century target date fund vintages outperformed their benchmarks in the majority of Class Period years and the underperformance was not sustained. Defendants also argued the Plan's fiduciaries met quarterly and had a good process in place for reviewing the Plan's investments. With respect to the recordkeeping fees and Mass Mutual fund claims, Defendants argued Plaintiffs did not have standing with respect to the Mass Mutual funds or for the recordkeeping claims through the first half of the Class Period. Defendants also argued Plaintiffs' plan comparators lacked an analysis of services provided, thus they failed to be meaningful comparators.

Putting aside liability arguments, before and during mediation, Defendants

contested Plaintiffs' damages assessment. While Plaintiffs were confident in all theories of liability, they acknowledge that at the time of settlement, the investment fund claims have gained only limited traction in courts beyond the motion to dismiss stage of ERISA actions. And Defendants have maintained these allegations are meritless.

Moreover, Plaintiffs' damages figures are dependent on the Court finding Defendants' fiduciary breaches to have occurred by the start of the Class Period on December 2, 2014. But there is no guarantee this date would ultimately prevail or Plaintiffs otherwise would be successful in establishing liability. The use of a later breach date and/or a determination the challenged decision-making processes were prudent could result in a recovery well below the $2,800,000.00 settlement amount or no recovery at all.

Taking these arguments into consideration at mediation, Plaintiffs re-assessed potential damages for the American Century funds by first comparing the performance of the American Century funds to their benchmark index while taking into consideration that over the ten year-plus Class Period, two of the years (2022 and 2023) were outlier years. In 2022, stock markets suffered historic losses and in 2023 they achieved historic gains. Further, in several years during the Class Period, the American Century funds underperformed their benchmark index by less than 1%. Plaintiffs further considered the real possibility a fact finder may limit the Class

Period to only periods where the funds had sustained underperformance. Accordingly, adjusting the damages by eliminating the outlier years of 2022 and 2023, years where underperformance was less than 1%, and including years where underperformance was sustained (2024 onward), Plaintiffs arrived at a $38 million loss for the American Century funds. But Plaintiffs calculated the maximum estimated potential damages at $9.5 million by applying a 75% discount (based on the likelihood of success given the particular facts of this case, in particular Defendants' liability defenses) to the $38 million loss.

Further, while Plaintiffs had initially determined $7.8 million as the damages amount for the recordkeeping and Mass Mutual claims, the arguments presented at mediation caused Plaintiffs to revise their damages assessment to $3.9 million, applying a 50% discount to the original assessment, again based on the likelihood of success based on the facts in this particular case.

So in all, the total potential damages in this case, as determined by Plaintiffs, was calculated to be $13.4 million. The settlement amount of $2,800,000.00 thus represents a recovery of 21% of potential recoverable damages. Given the potential damages, potential outcomes at trial, and the uncertainty of the Plan's actual losses, the monetary settlement is fair and reasonable.

#### 8. The Requirements of Fed. R. Civ. P. 23(e)(2) Also Are, or Likely Will Be, Satisfied

Rule 23(e)(1)(B)(i), as amended, provides preliminary approval should be

granted, and notice to the class authorized, if "the court will likely be able to . . . approve the proposal under Rule 23(e)(2)." FED. R. CIV. P. 23(e)(1(B)(i). Rule 23(e)(2) now primarily combines portions of the *GMC* test with several of the *Girsh* factors.[5] As a result, because the instant Settlement satisfies the *GMC* test and the *Girsh* factors, the requirements of Rule 23(e)(2) are substantially met for purposes of both preliminary and final approval. The three factors not encompassed by the *GMC* test and the *Girsh* factors the Court is to consider when determining whether to grant **final** approval are: (1) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; (2) "the terms of any proposed award of attorney's fees, including timing of payment"; and (3) whether "the proposal treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(C)(ii), (C)(iii) and (D).

As detailed *infra*, Section V, the proposed Notice plan submitted by the Parties comports with due process. This, combined with the Plan of Allocation, satisfies the requirement of Rule 23(e)(2)(C)(ii). Additionally, a proposed maximum of 33 1/3% of the Settlement Amount in attorneys' fees is contained in the proposed Class Notice. This amount is in line with analogous awards in ERISA class action cases and will likely be approved by the Court, so the requirement of Rule 23(e)(2)(C)(ii)

[5] Rule 23(e)(3) requires "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." FED. R. CIV. P. 23(e)(3). There are no agreements, other than the Settlement itself, in this case.

will likely be met.[6] Finally, the Plan of Allocation detailed in the Settlement Agreement clearly treats class members equitably relative to each other, thereby satisfying the requirement of Rule 23(e)(2)(D). Here, the Court can easily determine it is likely to grant final approval under Rule 23(e)(2), so preliminary approval is appropriate under Rule 23(e)(1)(B)(i).

## V. THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

### A. The Proposed Notice Plan Meets the Requirements of Due Process

In addition to preliminarily approving the Settlement Agreement, the Court must also approve the proposed means of notifying class members. FED. R. CIV. P. 23(c)(2); *see also Harry M.*, 2013 WL 1386286, at *2. "Adequate notice is essential to securing due process of law for the class members, who are bound by the judgment entered in the action." *Harry M.*, 2013 WL 1386286, at *2. In order to satisfy due process considerations, notice to Settlement Class Members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v.*

---

[6] *See McDonald v. Edward Jones*, 791 Fed.Appx. 638, 640 (8th Cir. 2020) (affirming judgment awarding the class counsel attorneys' fees of 1/3 of the settlement fund); *see also Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at *6 (M.D.N.C. Sept. 29, 2016); *Spano v. The Boeing Co.,* 2016 WL 3791123, at *4 (S.D. Ill. Mar. 31, 2016); *Abbott v. Lockheed Martin Corp*., 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015); *Krueger v. Ameriprise Financial*, 2015 WL 4246879, at *4 (D. Minn. July 13, 2015); *Beesley v. Int'l Paper Co.*, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014).

*Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (internal citations omitted).

As set forth below, Plaintiffs' proposed means of providing notice to the Settlement Class readily satisfies this standard as well as the mandates of due process. The combination of direct mail (and email if available), and publication of the Long Form Settlement Notice on a dedicated website should cause actual notice to reach a very high percentage of affected Plan participants and beneficiaries.

**B. Description of the Notice Plan**

As an initial matter, Class Counsel has asked the Court to approve the selection of Angeion as the Settlement Administrator for the Settlement. *See* Preliminary Approval Order, ¶ 8. Angeion is an industry leader in class action settlement administration and has successfully handled dozens of class settlements. *See* https://www.angeiongroup.com/.

The Settlement Notice plan includes multiple components designed to reach the largest number of Settlement Class Members possible. First, the Short Form Postcard Settlement Notice will be sent via First Class mail, postage prepaid, or email if available, to the last known address of each Settlement Class Member within thirty-five (35) calendar days of the Court's order granting preliminary approval of the Settlement. *See* Proposed Preliminary Approval Order, ¶ 7. Additionally, within thirty-five (35) calendar days, the Long Form Settlement Notice, along with other

litigation-related documents such as a list of frequently asked questions and the Settlement Agreement with all of its Exhibits, will be posted on a dedicated Settlement website established by Plaintiffs' counsel. *Id.* The Settlement Administrator will also establish and monitor a dedicated, toll-free Settlement telephone number with an Interactive Voice Response system which will have answers to frequently asked questions and also provide to Settlement Class Members the opportunity to leave a voicemail for Class Counsel should they have any additional questions regarding the Settlement.

The Settlement Notice Plan agreed to by the Parties satisfies all due process considerations and meets the requirements of FED. R. CIV. P. 23(e).[7]

## VI. CLASS CERTIFICATION IS APPROPRIATE

Plaintiffs seek preliminary certification of the defined Settlement Class (*see* Section III *supra*). At the preliminary approval stage, when the court has not previously certified a class, it may preliminarily certify a class for purposes of providing notice, leaving the final certification decision for the subsequent final Fairness Hearing. To be certified, a class must first satisfy the four basic

[7] Indeed, individual notice by First Class mail alone has been recognized by this Court as a manner of delivery of notice which comport with due process. *See In re: Janney Montgomery Scott LLC Fin. Consult. Litig.*, No., 2009 WL 2137224, at *7 (E.D. Pa. July 16, 2009). Plaintiffs' proposed Settlement Notice plan goes well beyond individual notice by First Class mail, further underscoring its fairness and appropriateness.

prerequisites of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. FED. R. CIV. P. 23(a); *In re: Schering-Plough Corp. ERISA Litig.*, 589 F.3d 585, 596 (3d Cir. 2009); *Moore v. Comcast Corp.*, 268 F.R.D. 530, 535 (E.D. Pa. 2010). Plaintiffs have satisfied all four elements of Rule 23(a). In this matter, the proposed Settlement Class (identified in the Settlement Agreement and Section V *supra*) satisfies each of the prerequisites of Rule 23(a) as well as at least one of the alternate requirements of Rule 23(b).

Precedent, including from within the Third Circuit, is clear that these types of ERISA § 502(a)(2) breach of fiduciary duty claims are well-suited for class status as they are brought, by definition and in practice, on behalf of retirement plans and affected participants.[8]

**A. The Proposed Class Satisfies the Requirements of Rule 23(a)**

**1. The Class is Sufficiently Numerous**

Rule 23(a)(1) calls for certification if "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). When there "are thousands of participants in [a] plan in any given year," the court "should make common sense assumptions regarding numerosity." *In re Ikon Office Solutions, Inc.*, 191 F.R.D.

---

[8] *See, e.g.*, *In re: Merck & Co., Inc. Securities, Derivative & ERISA Litig.*, MDL No. 1658, 2009 WL 331426, at *10-12 (D.N.J. Feb. 10, 2009); *Stanford* v. *Foamex, L.P.*, 263 F.R.D. 156, 175 (E.D. Pa. 2009); *In re Schering-Plough Enhance ERISA Litig.*, 2012 WL 1964451 (D.N.J. Dec. 16, 2010); *Moore*, 268 F.R.D. at 538.

457, 462 (E.D. Pa. 2000) (numerosity satisfied in analogous ERISA breach of fiduciary duty case where there were thousands of plan participants); *see also Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 391 (E.D. Pa. 2001). Here, numerosity is clearly satisfied because there were several thousand participants each year during the Class Period.[9]

**2. Common Questions of Law and Fact Abound**

Plaintiffs must also demonstrate the existence of common questions of law or fact. FED. R. CIV. P. 23(a)(2). Commonality involves "the capacity of a class[-]wide proceeding to generate common *answers* apt to drive resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotations omitted). This Action presents many common questions of law and fact, applicable to all members of the Settlement Class, including: (1) whether Defendants were fiduciaries of the Plan; (2) whether the Plan and the Participants were injured by such breaches; and (3) whether the Class is entitled to damages. "All of these questions are sufficient to satisfy plaintiffs' burden under Rule 23(a)(2) because they all address common issues of owed fiduciary responsibility to the plan participants." *Moore v. Simpson*, 1997 WL 570769, at *4 (N.D. Ill. Sept. 10, 1997). Consequently, Plaintiffs demonstrate a "level of commonality more than sufficient under Rule

---

[9] There were at least 39,958 participants in the in the Plan in 2018. *See* ECF No. 108, ¶ 58 (citing 2018 Form 5500 filed with the U.S. Dept. of Labor at 2).

23(a)(2)." *In re: Honeywell Int'l Sec. Litig.*, 211 F.R.D. 255, 260 (D.N.J. 2002); *see also Karg et al. v. Transamerica Corp.*, 2020 WL 3400199, at * 2 (N.D. Iowa Mar. 25, 2020) ("ERISA actions have sufficient commonality when class members share questions of 'whether Defendants acted as fiduciaries, whether they breached their duties of prudence and loyalty, [and] whether they violated ERISA, as well as whether and to what extent the Plan was injured as a result.'"); *Tracey v. Mass. Inst. Tech.*, 2018 WL 5114167, at * 4 (D. Mass. Oct. 19, 2018) ("ERISA breach of fiduciary duty actions relate to the duties owed to the Plan as a whole, commonality is quite likely to be satisfied.").

### 3. Plaintiffs' Claims are Typical of the Class

Here, Plaintiffs easily satisfy the typicality prong of Rule 23 because each Plaintiff and Class Member were subjected to the same recordkeeping fees and "[a]s common investors in the Challenged Funds, plaintiffs and proposed class members allege similar harm resulting from defendants' alleged fiduciary breaches. In fact, the harm may be identical." *Karg*, 2020 WL 3400199, at * 3; *see also Stanford*, 263 F.R.D. at 167 (finding typicality requirement satisfied "because plaintiff challenges the same conduct that affects both the plaintiff and the absent class members"); *Sims v. BB&T Corp.*, 2017 WL 3730552, at*4 (M.D.N.C. Aug. 28, 2017) (finding typicality where "each named plaintiff's claim and each class member's claim is based on the same events and legal theory—a breach of fiduciary duty stemming

from the defendants' alleged disloyal and imprudent process for selecting, administering, and monitoring the [p]lan's investments" and where "the remedial theory . . . is identical for the named plaintiffs and the class members.") (citations omitted).

**4. Plaintiffs and Class Counsel Will Adequately Protect the Interest of the Class**

Under Rule 23(a)(4), the representative parties must fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a)(4). "The rule 'tests the qualifications of class counsel and the class representatives. It also aims to root out conflicts of interest within the class to ensure that all class members are fairly and adequately represented in negotiations.'" *Fulton-Green v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, *5 (E.D. Pa. Sept. 24, 2019) (quoting *In re: Nat'l Football League Players Concussion Injury Litig,* 821 F.3d 410, 428 (3d Cir. 2016), *as amended* (May 2, 2016)). This test "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (citation and quotation marks omitted). Here both prongs of the adequacy test are met.

**i. Plaintiffs Have No Conflicts with Other Members of the Class and Will Vigorously Prosecute this Action On Behalf of the Class**

Here, each of the Plaintiffs understand the nature of their claims and duties as

class representatives to vigorously prosecute this case through its conclusion. *See See* Milano Decl. ¶¶ 5-7; Cameron Decl. ¶¶ 5-7; Hergenrader Decl. ¶¶ 5-7; Joncas Decl. ¶¶ 5-7; and Van Hooser Decl. ¶¶ 5-7; *see also Stanford*, 263 F.R.D. at 171 ("Because Stanford is challenging the same course of conduct and seeking the same relief as the rest of the absent class members, the court finds that Stanford's interests are sufficiently aligned with the those of the class."). Plaintiffs have met and exceeded that duty by, *inter alia*: (a) providing information to counsel prior to the initiation of the action and reviewing of the First Amended Complaint and Second Amended Complaint; (b) providing documents and assisting counsel in discovery matters; and (c) maintaining communication with counsel and monitoring the progress of the litigation. *See* Milano Decl. ¶¶ 6-7; Cameron Decl. ¶¶ 6-7; Hergenrader Decl. ¶¶ 6-7; Joncas Decl. ¶¶ 6-7; and Van Hooser Decl. ¶¶ 6-7. Moreover, had this litigation continued, Plaintiffs were committed to seeing this action through to the end and undertaking any responsibilities required of them as class representatives, including continuing to assist counsel in discovery matters, presenting for a deposition, participating in any other proceedings, and testifying at trial. *See* Milano Decl. ¶ 7; Cameron Decl. ¶ 7; Hergenrader Decl. ¶ 7; Joncas Decl. ¶ 7; and Van Hooser Decl. ¶ 7. Accordingly, Plaintiffs are adequate representatives of the proposed Class.

**ii. Plaintiffs' Counsel Have No Conflicts With the Class, Are Qualified and Experienced, and Will Vigorously Prosecute This Action for the Class**

The inquiry into the adequacy of class counsel is now decoupled from the Rule 23(a)(4) inquiry into the adequacy of the class representatives and is analyzed under factors set forth in Rule 23(g). *Karg*, 2020 WL 3400199, at *5 (citing FED. R. CIV. P. 23) ("If the motion includes a proposal for the appointment of class counsel, set forth with particularity the information the court must consider in assessing proposed class counsel's ability to represent the interests of the class fairly and adequately, as set forth in Federal Rules of Civil Procedure 23(g)(1)(A) and (B)."). Rule 23(g) complements the requirement of Rule 23(a) that class representatives adequately represent the interests of class members by focusing on the qualifications of class counsel. Rule 23(g)(1)(A) instructs the court to consider, among other things: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. FED. R. CIV. P. 23(g)(1)(A). Rule 23(g) notes a court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." FED. R. CIV. P. 23(g)(1)(B).

Here, Capozzi Adler satisfies all prerequisites. *First*, Capozzi Adler has done

significant work identifying and investigating potential claims in this action. It began its investigation of claims several months before filing suit. Gyandoh Decl., ¶¶ 3-4. This work included requesting documents from the Defendant pursuant to ERISA § 104(b)(4) and engaging consulting experts. Gyandoh Decl., ¶ 3. *Second,* Capozzi Adler and the undersigned counsel have significant experience handling ERISA matters and have knowledge of the applicable law. *Id*. at ¶¶ 44-56. Capozzi Adler has been appointed interim or co-lead counsel in several actions pending across the country and has defeated numerous motions to dismiss, won appeals, and settled analogous cases across the country. *Id*. Based on the foregoing, Capozzi Adler has the requisite qualifications to lead this litigation. *Third*, Capozzi Adler will commit the necessary resources to represent the class. With three office locations, the firm has been successfully serving clients for over 25 years offering a full range of legal services. *Id.* at ¶ 49.

Accordingly, appointment of Capozzi Adler as Class Counsel is warranted. *See Boley, et al. v. Universal Health Servs., Inc., et al.*, 2021 WL 859399 (E.D. Pa. Mar. 8, 2021) (appointing Capozzi Adler as co-lead counsel in analogous breach of fiduciary duty action); *Karg*, 2020 WL 3400199, at * 3 (appointing class counsel where "plaintiffs' counsel submitted documentation of their own qualifications and commitment.").

### B. The Class May Be Properly Certified Under Rule 23(b)(1)[10]

The proposed Class may be certified under Rule 23(b)(1)(A) and/or (B), as numerous courts have done in similar cases. *See* Gyandoh Decl., Exhibit 7 (list of decisions certifying classes in ERISA actions).

#### 1. Certification Under Rule 23(b)(1)(B) is Most Appropriate

Many courts have relied upon Rule 23(b)(1)(B) in certifying classes in analogous cases because it is particularly suited for cases alleging the breach of fiduciary obligations to plaintiffs. Indeed, the Advisory Committee Notes to Rule 23 explicitly instruct that certification under Rule 23(b)(1)(B) is appropriate in "an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." FED. R. CIV. P. 23(b)(1)(B) Advisory Committee's Note (1966 Amendment); *see also Schering-Plough*, 589 F.3d at 604 (finding certification of a Rule 23(b)(1)(B) class is appropriate where plaintiff's "proofs regarding defendants' conduct will, as a practical matter, significantly impact the claims of other Plan

---

[10] Plaintiffs only address certification under Rule 23(b)(1) because certification is proper under that subpart of Rule 23, and Rule 23(b)(3) is intended to address "situations in which class action treatment is not as clearly called for as it is in Rule 23(b)(1)." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997). Because the class may be certified under Rule 23(b)(1), however, the Court need not reach the propriety of certification under any other subpart of Rule 23.

participants and of employees who invested in the Stock Fund. [Plaintiff's] claims are based on defendants' conduct, not, as defendants urge, on unique facts and individual relationships"); *Moore*, 268 F.R.D. at 538 (certifying 23(b)(1)(B) class); *Clark v. Duke Univ.*, 2018 WL 1801946, at *9 (M.D.N.C. April 13, 2018) (satisfied under Rule 23(b)(1)(B) when plaintiffs "established that individual adjudications would be dispositive of the interests of the other participants not parties to the individual adjudications, because the claims concern the same actions in managing the Plan and because damages are owed to the Plan as a whole and not individual plaintiffs").

Here, the Complaint alleges breaches of fiduciary duties under ERISA. Therefore, the only remedy available to participants in the Plan is Plan-wide relief, including the restoration of losses. *See Mass. Mut. Life Ins. Co.*, 473 U.S. 134, 139-40 (1985). Thus, the proposed Class meets the requirements of FED. R. CIV. P. 23(b)(1), given the nature of this action and the relief sought on behalf of the Class. Accordingly, class certification should be granted under Rule 23(b)(1)(B), consistent with the Advisory Committee Notes to Rule 23 and the overwhelming weight of case law.[11]

### 2. Certification is Also Appropriate Under Section 23(b)(1)(A)

[11] *See* Gyandoh Decl. ¶ 56, Exhibit 7 (listing decisions certifying Rule 23(b)(1)(B) classes).

If the Court determines that certification is appropriate under Rule 23(b)(1)(B), the inquiry need go no further. *See, e.g.*, *Koch v. Dwyer*, No. 98-CV-5519, 2001 WL 289972, at *5 n.2 (S.D.N.Y. Mar. 23, 2001) ("Since class certification is proper under Rule 23(b)(1)(B), it need not be determined whether Plaintiff has also satisfied the requirements of Rule 23(b)(1)(A) or 23(b)(2)."). Nevertheless, it is not uncommon for courts to certify ERISA class actions under both subsections 23(b)(1)(B) and 23(b)(1)(A). *See, e.g.*, *Stanford*, 263 F.R.D. at 173-174; *Merck*, 2009 WL 331426, at *10-11; *In re: Nortel Networks Corp. ERISA Litig.*, 2009 WL 3294827, at *16 (M.D. Tenn. Sept. 2, 2009); *Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 193-194 (W.D. Mo. 2009); *see also* Gyandoh Decl., ¶ 64.

## VII. CONCLUSION

Plaintiffs propose the Fairness Hearing be scheduled at least 90 calendar days after entry of the Preliminary Approval Order in order to provide the Settlement Class with fair notice and the opportunity to be heard, as well as to provide notice to appropriate federal and state officials as required by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, and 1711-1715. The submitted proposed preliminary approval order sets forth the proposed schedule of events which are subject to the Court's approval. For the reasons set forth above, the Settlement meets the standard for preliminary approval under Rule 23.

Dated: September 29, 2026 Respectfully Submitted,

/s/ Mark K. Gyandoh
Mark K. Gyandoh, Esquire
N.J. Bar ID: 025622001
**CAPOZZI ADLER, P.C.**
312 Old Lancaster Road
Merion Station, PA 19066
Email: markg@capozziadler.com
Phone: (610) 890-0200

*Counsel for Plaintiffs and the Putative Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2026, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By: /s/ *Mark K. Gyandoh*
Mark K. Gyandoh, Esq.